690 So.2d 573 (1997)
Timothy Ray HADDEN, Petitioner,
v.
STATE of Florida, Respondent.
Richard BEAULIEU, Petitioner,
v.
STATE of Florida, Respondent.
Nos. 87574, 87918.
Supreme Court of Florida.
February 6, 1997.
Rehearing Denied March 21, 1997.
*574 Nancy C. Daniels, Public Defender and P. Douglas Brinkmeyer, Assistant Public Defender, Chief, Appellate Intake and Kimberly A. Johnson, Florida State University College of Law, Certified Legal Intern, on behalf of Public Defender's Office, Second Judicial Circuit, Tallahassee, and William F. Jung of Black & Jung, P.A., Tampa, for Petitioners.
Robert A. Butterworth, Attorney General; James W. Rogers, Bureau Chief, Criminal Appeals and Carolyn J. Mosley, Assistant Attorney General, Tallahassee, and Steven J. Guardiano, Assistant Attorney General, Daytona Beach, for Respondent.
WELLS, Justice.
We have for review the decisions of the First District Court of Appeal in Hadden v. State, 670 So.2d 77 (Fla. 1st DCA 1996) (en banc), and the Fifth District Court of Appeal in Beaulieu v. State, 671 So.2d 807 (Fla. 5th DCA 1996), certifying the following question to be of great public importance:
IN VIEW OF THE SUPREME COURT'S HOLDING IN TOWNSEND V. STATE, DOES FLANAGAN V. STATE, REQUIRE APPLICATION OF THE FRYE STANDARD OF ADMISSIBILITY TO TESTIMONY BY A QUALIFIED PSYCHOLOGIST THAT THE ALLEGED VICTIM IN A SEXUAL ABUSE CASE EXHIBITS SYMPTOMS CONSISTENT WITH THOSE OF A CHILD WHO HAS BEEN SEXUALLY ABUSED?
Hadden, 670 So.2d at 83; Beaulieu, 671 So.2d at 811. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified *575 question in the affirmative. In reaching this decision, we have been greatly aided by the thorough analysis of this issue in Judge Ervin's dissenting opinion in Hadden, Judge Harris's opinion in Beaulieu, and Judge Griffin's opinion in Toro v. State, 642 So.2d 78 (Fla. 5th DCA 1994). We hold that upon proper objection prior to the introduction of a psychologist's expert testimony offered to prove the alleged victim of sexual abuse exhibits symptoms consistent with one who has been sexually abused, the trial court must find that the psychologist's testimony is admissible under the standard for admissibility of novel scientific evidence announced in Frye v. United States, 293 F. 1013 (D.C.Cir. 1923), and adopted in Florida.
Further, we hold that at the present time, a psychologist's opinion that a child exhibits symptoms consistent with what has come to be known as "child sexual abuse accommodation syndrome" (CSAAS)[1] has not been proven by a preponderance of scientific evidence to be generally accepted by a majority of experts in psychology. Therefore, such opinions (which we will refer to as "syndrome testimony") may not be used in a criminal prosecution for child abuse. In such testimony, the expert (usually a psychologist by training) testifies on the basis of studies that children who have been sexually abused develop certain symptoms. For example, in Ward v. State, 519 So.2d 1082, 1083 n. 4 (Fla. 1st DCA 1988), the First District explained the three types of symptoms as
sexual behavior (suggestions of sexual activities, e.g., sexual play with toys); behavioral reactions (extreme passiveness or aggressiveness, changes in eating, underachievement); and emotional reactions (sleep disturbances, physical and depressive reactions).
The psychologist then links the type of syndrome symptoms to the child who is the victim in the case being tried.
Accordingly, we approve Hadden in part to the extent that the district court found the issue of the reliability of the expert opinion preserved, and we quash the remainder of the decision. We remand that case with directions that the case be remanded to the trial court for a new trial.
Likewise, we quash Beaulieu and remand for a determination of whether an objection to the admission of the expert's testimony was properly preserved below on the basis of the testimony not passing a Frye test and for further proceedings consistent with this opinion.

Facts
Timothy Ray Hadden was charged by amended information with three counts of sexual battery on a person under twelve by vaginal penetration with his finger. During the trial, the State proffered out of the jury's presence opinion testimony from a mental health counselor concerning the symptoms and diagnostic criteria typically associated with sexually abused children. Hadden objected to this testimony on the basis that it lacked scientific reliability and that the expert failed to identify enough diagnostic criteria to give an adequate description of the victim's condition. The State argued that the evidence was admissible under Ward, in which the First District found similar testimony admissible as circumstantial evidence of sexual abuse. In Ward, the district court applied a three pronged analysis to determine the admissibility of this evidence: (1) the expert was qualified to express an opinion; (2) the subject area of child abuse was so developed to permit an expert to express an opinion; and (3) child abuse is not so well *576 understood that a properly qualified expert would know more than a lay person. Id. at 1083. The trial court overruled Hadden's objection and allowed the expert to testify. Hadden was thereafter convicted of the lesser charge of lewd assault.
On appeal, the First District affirmed. Hadden v. State, 670 So.2d 77 (Fla. 1st DCA 1996) (en banc). The court recognized our decision in Flanagan v. State, 625 So.2d 827 (Fla.1993), in which we reaffirmed the proposition that new and novel scientific evidence is inadmissible unless it meets the Frye test. This test requires that the scientific principles undergirding this evidence be found by the trial court to be generally accepted by the relevant members of its particular field.[2] Accordingly, the First District framed the issue in this case as whether the scientific expert testimony admitted below was new and novel so as to require Frye testing before its admission. Hadden at 82.
The district court ultimately concluded that for alternate reasons, the testimony in the case did not need to be subject to a Frye test. First, the district court turned to State v. Townsend, 635 So.2d 949, 958 (Fla.1994) (footnote omitted), in which we cited Ward in stating: "[I]f relevant, a medical expert witness may testify as to whether, in the expert's opinion, the behavior of a child is consistent with the behavior of a child who has been sexually abused." The district court reasoned that in view of this Court citing Ward with approval in Townsend this Court concluded that this type of expert testimony was not new or novel and did not require Frye testing. Hadden, 670 So.2d at 82. The district court distinguished our decision in Flanagan on the basis that Flanagan dealt with pedophile-profile evidence, while this case dealt with syndrome evidence. Hadden at 82. The district court found that the pedophile-profile evidence in Flanagan was condemned because the testimony was intended to and did identify the defendant as the likely perpetrator. Hadden. However, in this case, the district court found that the syndrome evidence at issue was innocuous by comparison because it only demonstrated circumstantially that sexual abuse had occurred at the time and place charged and it did not identify a likely perpetrator. Id. Again, the district court stated that it was led to this conclusion by the favorable cite to Ward in this Court's Townsend decision. Id. Alternatively, the district court found that even if the testimony was considered new or novel, the testimony in this case was couched in terms of the expert's training and experience and was thus opinion testimony not covered by Frye. Hadden at 82-83. Recognizing the potential for conflict, the court then certified the foregoing question. Id. at 83.
Judge Ervin dissented. Judge Ervin wrote that the parties were procedurally barred from claiming the evidence here was pure opinion testimony as defined in Flanagan, and even if properly before the appellate court, the testimony went beyond pure opinion testimony. Hadden at 85 (Ervin, J., dissenting). Further, Judge Ervin concluded from his analysis of the Florida appellate decisions on this issue that no appellate court had addressed the question of whether this type of evidence was admissible under Frye, but rather, the question had only been addressed as a question of relevance. Id. at 85-88. Consequently, this evidence needed to be examined in light of the record, scientific literature, and judicial decisions. Judge Ervin then set out his examination of whether such opinion testimony was generally accepted and concluded that this testimony was not accepted in its particular field as a diagnosis of sexual abuse. Id. at 88-91. Accordingly, Judge Ervin would have held that it was error to admit this testimony as substantive evidence because it bolstered the child's credibility, and he would have reversed the convictions. Id. at 91.
In the consolidated case, Richard Beaulieu was charged with various sex acts with a minor. At trial, the victim testified about being abused by the defendant, and this testimony was corroborated by the victim's own *577 hearsay statements to others. Additionally, a psychologist testified that from his interviews with the child victim and the child's drawings and other tests, the victim fit the child-abuse profile. Beaulieu v. State, 671 So.2d 807 (Fla. 5th DCA 1996). While the Fifth District, like the First District in Hadden, affirmed the convictions on the authority of Townsend, the Fifth District noted that it agreed with Judge Ervin's analysis of the issue in Hadden. Beaulieu, 671 So.2d at 809-10. Judge Harris, in the court's unanimous opinion, expressly agreed that the syndrome testimony would not pass a Frye test. The district court then certified the same question as the Hadden court. Beaulieu at 810.

Analysis
We likewise agree with Judge Ervin's conclusions that syndrome testimony in child abuse prosecutions must be subjected to a Frye test and that such evidence has not to date been found to be generally accepted in the relevant scientific community. Therefore, we hold that expert testimony offered to prove the alleged victim of sexual abuse exhibits symptoms consistent with one who has been sexually abused should not be admitted. We recognize that this decision comes after our decision in Glendening v. State, 536 So.2d 212 (Fla.1988), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989), and State v. Townsend, 635 So.2d 949 (Fla. 1994). However, those decisions did not deal with syndrome evidence confronted with a Frye objection. The Frye challenge now having been made to syndrome testimony, we recede from the parts of those decisions which hold that syndrome evidence is admissible in child sexual abuse prosecutions.
The issue of the admissibility of syndrome evidence has been the subject of substantial appellate review in the district courts since the enactment of the Florida Evidence Code, which applied to all cases for crimes occurring after July 1, 1979, ch. 78-379, § 23, Laws of Fla., and all civil cases pending or brought on or after October 1, 1981, see ch. 81-93, § 1, Laws of Fla. Since the Frye standard is not mentioned in the evidence code, several district courts concluded that the evidence code did away with this standard and replaced it with a relevancy standard. See, e.g., Andrews v. State, 533 So.2d 841 (Fla. 5th DCA 1988), review denied, 542 So.2d 1332 (1989); Kruse v. State, 483 So.2d 1383 (Fla. 4th DCA 1986), review dismissed, 507 So.2d 588 (1987); Hawthorne v. State, 470 So.2d 770, 782-86 (Fla. 1st DCA 1985) (Ervin, J., concurring in part and dissenting in part). In Kruse, a case involving the issue of the admissibility of syndrome opinion evidence in a child-abuse prosecution, the Fourth District utilized the relevancy standard and found expert testimony concerning posttraumatic stress syndrome admissible. Kruse, 483 So.2d at 1386. Other district courts relied upon this reasoning to find similar testimony admissible. In Ward v. State, 519 So.2d 1082 (Fla. 1st DCA 1988), the district court cited Kruse's relevancy standard with approval in finding expert testimony concerning child-abuse syndrome admissible. See also Calloway v. State, 520 So.2d 665 (Fla. 1st DCA), review denied, 529 So.2d 693 (Fla.1988). The United States Supreme Court similarly found that the Federal Evidence Code, which also did not reference the Frye test, superseded the Frye test. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
The question of the appropriate standard of admissibility of novel scientific evidence of any kind following the adoption of the evidence code was resolved by this Court in favor of the Frye test. See, e.g., Stokes v. State, 548 So.2d 188 (Fla.1989). In Stokes, this Court specifically rejected a balancing approach as being too impractical and difficult to apply, id. at 194-95, and stated that the Frye standard is the proper standard for admission of novel scientific expert testimony.[3] In reaching this conclusion, this Court found the following reasons for the Frye test compelling:
The underlying theory for this rule [Frye] is that a courtroom is not a laboratory, and as such it is not the place to conduct scientific experiments. If the scientific community considers a procedure or process *578 unreliable for its own purposes, then the procedure must be considered less reliable for courtroom use.
Id. at 193-94. We have subsequently reaffirmed our allegiance to Frye several times. See, e.g., Brim; State v. Vargas, 667 So.2d 175 (Fla.1995); Ramirez v. State, 651 So.2d 1164 (Fla.1995); State v. Hickson, 630 So.2d 172 (Fla.1993); Flanagan v. State, 625 So.2d 827 (Fla.1993).
Our specific adoption of that test after the enactment of the evidence code manifests our intent to use the Frye test as the proper standard for admitting novel scientific evidence in Florida, even though the Frye test is not set forth in the evidence code. See Brim; Ramirez, 651 So.2d at 1167 n. 2; Flanagan, 625 So.2d at 829 n. 2; see also People v. Leahy, 8 Cal.4th 587, 34 Cal. Rptr.2d 663, 882 P.2d 321, 328 (1994) (decisions using the Frye test issued after the adoption of the evidence code showed intent to adhere to Frye); Fishback v. People, 851 P.2d 884, 890 (Colo.1993) (same).
The reasons for our adherence to the Frye test announced in Stokes continue today. Moreover, we firmly hold to the principle that it is the function of the court to not permit cases to be resolved on the basis of evidence for which a predicate of reliability has not been established. Reliability is fundamental to issues involved in the admissibility of evidence. It is this fundamental concept which similarly forms the rules dealing with the admissibility of hearsay evidence. As a rule, hearsay evidence is considered not sufficiently reliable to be admissible, and its admission is predicated on a showing of reliability by reason of something other than the hearsay itself. See § 90.802, Fla. Stat. (1995) ("Except as provided by statute, hearsay evidence is inadmissible."). This same premise underlies why novel scientific evidence is to be Frye tested. Novel scientific evidence must also be shown to be reliable on some basis other than simply that it is the opinion of the witness who seeks to offer the opinion. In sum, we will not permit factual issues to be resolved on the basis of opinions which have yet to achieve general acceptance in the relevant scientific community; to do otherwise would permit resolutions based upon evidence which has not been demonstrated to be sufficiently reliable and would thereby cast doubt on the reliability of the factual resolutions.
Using the Frye test, we addressed the admission of profile testimony as substantive evidence of the defendant's guilt. See Flanagan. In Flanagan, we recognized the danger of the fact finder overemphasizing expert testimony couched in terms of a profile. We specifically stated:
Profile testimony ... by its nature necessarily relies on some scientific principle or test, which implies an infallibility not found in pure opinion testimony. The jury will naturally assume that the scientific principles underlying the expert's conclusion are valid. Accordingly, this type of testimony must meet the Frye test, designed to ensure that the jury will not be misled by experimental scientific methods which may ultimately prove to be unsound.
Id. at 828.
In our decision in Flanagan, we found helpful Judge Ervin's concurring and dissenting opinion. Id. at 828-29; see Flanagan v. State, 586 So.2d 1085, 1101 (Fla. 1st DCA 1991) (Ervin, J., concurring and dissenting). In his opinion, Judge Ervin discussed not only "profile testimony" but also discussed syndrome evidence as being opinion evidence similar to profile evidence. We do not agree with the majority decision of the First District that profile evidence is distinguished from syndrome evidence because the profile evidence was intended to and did identify the defendant as the likely perpetrator of the sexual abuse charged while syndrome evidence only substantiated that sexual abuse occurred. Hadden, 670 So.2d at 82. Rather, we align ourselves with those courts in other states cited by Judge Ervin in his concurring and dissenting opinion in Flanagan, 586 So.2d at 1110 (Ervin, J., concurring and dissenting), and his dissent in Hadden, see Hadden, 670 So.2d at 89 (Ervin, J., dissenting), and by Judge Griffin in her opinion in Toro v. State, 642 So.2d 78, 82 (Fla. 5th DCA 1994), which have determined that a psychologist's syndrome testimony about CSAAS is inadmissible as substantive evidence of the defendant's guilt. We find that *579 both profile and syndrome evidence suffer from the same infirmitythey have not reached the level of general acceptance in the relevant scientific community. See, e.g., State v. Cressey, 137 N.H. 402, 628 A.2d 696 (1993); State v. J.Q., 130 N.J. 554, 617 A.2d 1196 (1993); Commonwealth v. Dunkle, 529 Pa. 168, 602 A.2d 830 (1992).
We specifically note that the appropriate standard of review of a Frye issue is de novo. See Brim, 22 Fla. L. Weekly at S47, ___ So.2d at ___. Thus, an appellate court reviews a trial court's ruling as a matter of law rather than under an abuse-of-discretion standard.[4]Brim at S47, ___ So.2d at ___. When undertaking such a review, an appellate court should consider the issue of general acceptance at the time of appeal rather than at the time of trial. See generally id. at 14, ___ So.2d at ___ (stating that a report issued during the pendency of the appeal should be considered in determining whether novel scientific evidence is admissible under Frye); Hayes v. State, 660 So.2d 257 (Fla.1995) (finding a Frye test not properly applied in light of a scientific report issued after the trial); Bundy v. State, 471 So.2d 9, 18 (Fla.1985) (finding that in a case in which the trial court failed to conduct a Frye hearing, hypnotically refreshed testimony was not shown to be reliable at the time of appeal), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986). An appellate court may examine expert testimony, scientific and legal writings, and judicial opinions in making its determination. See Flanagan, 625 So.2d at 828 (finding after an examination of the relevant academic literature and case law that sexual-offender profile evidence was not generally accepted); Hadden, 670 So.2d at 88 (Ervin J., dissenting); Vargas v. State, 640 So.2d 1139 (Fla. 1st DCA 1994), quashed on other grounds, 667 So.2d 175 (Fla.1995).
In his dissent in Hadden, which we approve, Judge Ervin concluded that while the debate continues among experts regarding whether the child sexual abuse accommodation syndrome is an adequate therapeutic tool for determining the presence of abuse, there is no consensus among experts that it is useful as substantive evidence of guilt. Hadden, 670 So.2d at 89. Judge Ervin relied upon the authoritative writings of Professor John E.B. Myers in determining that the diagnosis of sexual abuse through a syndrome analysis is not a generally accepted method of diagnosis of sexual abuse. Judge Ervin also noted that the New Jersey Supreme Court in State v. J.Q., 130 N.J. 554, 617 A.2d 1196 (1993), cited Professor Myers' article as authority in explaining the court's reasons in finding syndrome evidence in child sex-abuse cases inadmissible as substantive evidence of guilt and in distinguishing between this syndrome evidence and battered child syndrome evidence:
Summit [the author of the article first describing child sexual abuse accommodation syndrome] did not intend the accommodation syndrome as a diagnostic device. The syndrome does not detect sexual abuse. Rather, it assumes the presence of abuse, and explains the child's reactions to it. Thus, child sexual abuse accommodation syndrome is not the sexual abuse analogue of battered child syndrome, which is diagnostic of physical abuse. With battered child syndrome, one reasons from the type of injury to the cause of injury. Thus, battered child syndrome is probative of physical abuse. With child sexual abuse accommodation syndrome, by contrast, one reasons from presence of sexual abuse to reactions to sexual abuse. Thus, the accommodation syndrome is not probative of abuse.
Id. 617 A.2d at 1209 (quoting John E.B. Myers, et. al., Expert Testimony in Child Sexual Abuse Litigation, 68 Neb. L.Rev. 1, 67 (1989)). An analysis of this relevant literature and case law leads us to expressly hold that such evidence does not meet the Frye test.
We did point out in Flanagan that the Frye standard for admissibility of scientific evidence is not applicable to an expert's pure opinion testimony which is based solely *580 on the expert's training and experience. See 625 So.2d at 828. While an expert's pure opinion testimony comes cloaked with the expert's credibility, the jury can evaluate this testimony in the same way that it evaluates other opinion or factual testimony. Id. When determining the admissibility of this kind of expert-opinion testimony which is personally developed through clinical experience, the trial court must determine admissibility on the qualifications of the expert and the applicable provisions of the evidence code. We differentiate pure opinion testimony based upon clinical experience from profile and syndrome evidence because profile and syndrome evidence rely on conclusions based upon studies and tests. Further, we find that profile or syndrome evidence is not made admissible by combining such evidence with pure opinion testimony because such a combination is not pure opinion evidence based solely upon the expert's clinical experience.[5]
Moreover, it is only upon proper objection that the novel scientific evidence offered is unreliable that a trial court must make this determination. Unless the party against whom the evidence is being offered makes this specific objection, the trial court will not have committed error in admitting the evidence. See Archer v. State, 673 So.2d 17, 21 (Fla.) (finding defendant's failure to object to a claimed error at trial provided no ruling by the trial judge upon which to base the claim of error on appeal), cert. denied, ___ U.S. ___, 117 S.Ct. 197, 136 L.Ed.2d 134 (1996). For example, in Glendening v. State, 536 So.2d 212 (Fla.1988), we addressed the question of whether it was improper for an expert witness to testify to her opinion about whether the alleged victim had been sexually abused. Glendening, 536 So.2d at 219-20. The defendant objected to this question. However, the objection was not on the basis that the testimony was scientifically unreliable; rather, the objection was that the question called for an opinion on the ultimate issue in the case and that the witness was not competent to make this conclusion. Id. at 220. As the defendant did not make a Frye objection, the only basis upon which the trial court could rule on this evidence was the relevancy standard for expert testimony as outlined in the evidence code. Glendening.[6] Accordingly, this was the only basis for the appellate court to rule on the evidence. See Terry v. State, 668 So.2d 954, 961 (Fla.1996) (finding that in order for an argument to be cognizable on appeal, it must be the specific contention asserted as the legal ground for objection, exception, or motion below); Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982) (same).
We now apply this clarified standard to the facts of the two cases below. In Hadden, after the State proffered the testimony of a mental health counselor, the defendant objected to the testimony on the basis that the syndrome does not have scientific reliability. We find this objection sufficiently brought the question to the trial court's attention and preserved the issue for appellate review. On this issue, we approve the district court. Hadden, 670 So.2d at 80.
Next, we address the question of whether the testimony in Hadden was pure opinion testimony or scientific-expert testimony. The expert in Hadden testified on direct examination that based upon his experience and training in child sex-abuse cases, the victim exhibited symptoms consistent with a child who had been sexually abused. However, as the answer was clarified on cross-examination, the expert's answer was based not only upon the expert's experiences *581 but on syndromes such as posttraumatic stress disorder and related diagnostic criteria. Consequently, the expert's opinion was based upon diagnostic standards which must pass the Frye test. Hadden, 670 So.2d at 85 (Ervin, J., dissenting).
Our finding of error does not necessarily require reversal because even if the evidence is found to be inadmissible under Frye, the error may still be harmless. See Flanagan, 625 So.2d at 829-30. Once a reviewing court determines that the trial court erred, a reviewing court must look at the context of the entire case and determine whether there is a reasonable probability that the error affected the verdict. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). However, we cannot conclude that in this case the admission of this syndrome evidence was harmless. See Hadden, 670 So.2d at 91-92 (Ervin, J., dissenting) (concluding the admission of this evidence at trial was harmful). We therefore quash the decision of the district court and remand for a new trial.
In Beaulieu, the district court did not deal with the issue of whether there was a sufficient objection to the expert's testimony on the basis that it was not reliable. Therefore, we remand this case to the district court to make that initial determination and for further proceedings consistent with this opinion.

Conclusion
In sum, we answer the certified question in the affirmative and hold that prior to the introduction of expert testimony offered to prove the alleged victim of sexual abuse exhibits symptoms consistent with one who has been sexually abused, upon proper objection the trial court must find that the expert's testimony is admissible under the standard for admissibility of novel scientific evidence announced in Frye v. United States, 293 F. 1013 (D.C.Cir.1923), and adopted in Florida. We further hold that currently this evidence does not pass a Frye test; consequently, this evidence may not be used in a criminal prosecution for child abuse. Accordingly, we remand both cases for proceedings consistent with this opinion.
Accordingly, we approve Hadden to the extent the district court found the question of reliability of the expert opinion preserved; we quash the remainder of the Hadden decision and the decision in Beaulieu; and we remand these cases for proceedings consistent with this opinion.
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING and ANSTEAD, JJ., concur.
NOTES
[1] In footnote 22 of his concurring and dissenting opinion in Flanagan v. State, 586 So.2d 1085, 1110 (Fla. 1st DCA 1991) (Ervin, J., concurring and dissenting), approved in part, 625 So.2d 827 (Fla.1993), Judge Ervin observed as to CSAAS:

CSAAS was first described in a 1983 article by Dr. Ronald Summit, listing five general attributes of child sexual victims (secrecy, helplessness, denial, delayed disclosure, and retraction), whom he had treated over a substantial period of time. Summit, The Child Sexual Abuse Accommodation Syndrome, 7 Int'l. J. of Child Abuse & Neglect 177 (1983). CSAAS as a means of predicting sexual abuse has been the subject of considerable criticism because the syndrome assumes the existence of abuse, and was not developed as a method of detecting abuse. See In re Sara M., 194 Cal. App.3d 585, 593, 239 Cal.Rptr. 605, 611 (1987); People v. Gray, 187 Cal.App.3d 213, 217-18, 231 Cal.Rptr. 658, 660-61 (1987).
[2] We have recently defined "general acceptance" to mean acceptance by a clear majority of the members of the relevant scientific community, with consideration by the trial court of both the quality and quantity of those opinions. Brim v. State, 22 Fla. L. Weekly S45, ___ So.2d ___ [1997 WL 18239] (Fla. Jan. 16, 1996).
[3] In Stokes, this Court addressed the question of admissibility of post-hypnotic testimony.
[4] We recently addressed the proper procedures for the admission of expert opinion testimony in Ramirez v. State, 651 So.2d 1164 (Fla.1995).
[5] We caution that our holding should not be used to determine the admissibility of syndrome evidence other than as evidence of child sexual abuse. The admissibility of syndrome evidence in other cases will have to be decided on the basis of the intended purpose of the admission of that evidence and whether the evidence is new or novel scientific evidence which requires a Frye test. Nor should our decision here be read so broadly as to require Frye tests for psychological testimony which is not new or novel such as that pertaining to competency or intelligence quotient.
[6] Similarly, in Toro v. State, 642 So.2d 78 (Fla. 5th DCA 1994), the district court found that the defendant's objection at trial that the testimony of the State's expert exceeded the scope of the proffer was insufficient to preserve the issue of whether this testimony was scientifically reliable under Frye.