695 So.2d 461 (1997)
Paul S. CORREIA, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1017.
District Court of Appeal of Florida, Fourth District.
June 11, 1997.
Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
*462 STEVENSON, Judge.
Appellant, Paul Correia, was tried by jury, convicted of two counts of capital sexual battery, and sentenced to life in prison with a mandatory 25 years. We affirm the conviction but write to discuss appellant's claim that the trial court erred in allowing the testimony of an expert witness in the "field of interviewing young children who have made allegations of sexual abuse." Because the issue was not properly preserved for appellate review and because the admission of this testimony was not fundamental error, we affirm.
Appellant was charged with committing various sexual acts on D.C., the five-year-old daughter of his girlfriend. During the investigation, D.C. was interviewed by Rachel Carroll, a counselor for the Coral Springs Police Department. At trial, the State sought to have Ms. Carroll accepted as an expert "in the field of interviewing children who have made allegations of sexual abuse." Ms. Carroll's qualifications include an associate degree, a bachelor's degree, and a master's degree in psychology and counseling, and she has been specifically trained by law enforcement institutions in various techniques for interviewing child abuse victims. Since 1976, Ms. Carroll has worked with disturbed or abused children in various centers. The court overruled appellant's objection that Ms. Carroll was not adequately qualified, and accepted her as "an expert in the field of interviewing young children."

Ms. Carroll's expert testimony
At trial, the State attempted to elicit an opinion from Ms. Carroll concerning the validity of D.C.'s allegations of sexual abuse:
[State:] In your clinical opinion, was [D.C.]'s statement consistent with the statement of an abused child?
The defense raised the following objection:
[Defense:] Your Honor, obviously if you feel that falls within her area of expertiseI'm objecting to her saying that unless you think that represents her area of expertise.
THE COURT: Well, I think to justify as to whether or not the behavior or whether or not whatever the child says was consistent with what she has stated. All right. You can answer that.
[Ms. Carroll:] When I look at the elements I look at to validate or invalidate [a statement by a child sexual abuse victim] ... I found the statement to be consistent with a child that had been sexualized.
Ms. Carroll's interviewing technique and validation methodology follow the teachings of Dr. Suzanne Sgroi. Dr. Sgroi has published a book in which she describes a "conceptual framework for child sexual abuse" comprised of five stages: engagement, sexual interaction, secrecy, disclosure, and suppression. Suzanne M. Sgroi, Handbook of Clinical Intervention in Child Sexual Abuse 9-36 (1982). Dr. Sgroi describes how this framework can be used in "validating" claims of sexual abuse; that is, analyzing the allegation to ultimately decide, "did sexual abuse of the target child actually occur or not?" Id. at 39. Dr. Sgroi explains:
[M]ost cases can be validated by investigative interviewing and by assessing the credibility of the history of sexual abuse elicited from the child.
Id. at 70.
The credibility of the facts elicited should be assessed within a conceptual framework of child sexual abuse (see chapter 1). The interviewer and others must ask themselves if the story fits within such a framework.... In the small number of cases of false complaints that we have encountered, the facts elicited by the investigative interviewer did not fit within a conceptual framework of child sexual abuse.
Id. at 48, 70.
Applying this methodology, Ms. Carroll concluded that D.C.'s account fit within the five-stage conceptual framework:
When I look at the elements I look at to validate or invalidate based on the fact that there was an engagement phase, based on the fact that there was a secrecy phase, based on the fact that there was a disclosure phase, based on the fact that she has explicit sexual knowledge, based on the fact that she was able to give descriptive detail ... I found the statement to be *463 consistent with a child that had been sexualized.

Expertise in investigative interviewing
Based on Dr. Sgroi's theories and Ms. Carroll's testimony, it would appear that an expert in the area of investigative interviewing would possess a unique abilitythrough training, education, and experienceto conduct effective information-gathering interviews with alleged child sexual abuse victims. An expert in this area would also be able to assess the validity of the accusation by comparing the child's account of the sexual abuse with certain patterns commonly found in authentic accusations of abuse.
With this in mind, Ms. Carroll was not testifying beyond her expertise when she opined that D.C.'s statement was congruent with those statements of children who had actually been abused. The critical question is whether there is any place in the courtroom for this type of testimony. Our supreme court has indicated that there is. While acknowledging the "generally accepted" principle that an expert may not "directly vouch" for the credibility of a witness, the court has stated:
[A]n expert may properly aid a jury in assessing the veracity of a victim of child abuse
without usurping their exclusive function by generally testifying about a child's ability to separate truth from fantasy... or perhaps by discussing various patterns of consistency in the stories of child abuse victims and comparing those patterns with patterns in [the alleged victim's] story.
[United States v. Azure, 801 F.2d 336, 340 (8th Cir.1986) ]. We recognize that expert testimony such as this, by its very nature, to some degree will tend to bolster or refute the credibility of the child victim; however, the ultimate conclusion as to the victim's credibility always will rest with the jury. The expert will merely be equipping the jury with the knowledge necessary to make this determination.
Tingle v. State, 536 So.2d 202, 205 (Fla.1988) (emphasis added).
On appeal, appellant argues that Ms. Carroll crossed the line during the course of her testimony by improperly vouching for D.C.'s credibility. See Weatherford v. State, 561 So.2d 629, 634 (Fla. 1st DCA 1990) (holding that an expert may not vouch for a child's credibility by stating her belief that the child is being truthful). We do not decide whether any, or all, of Ms. Carroll's testimony amounted to improper vouching because appellant did not object to her testimony on that basis at trial. The defense objected below only on the grounds that Ms. Carroll was not properly qualified as an expert and that she was testifying outside her area of expertise. These objections did not adequately apprise the trial judge that appellant believed that Ms. Carroll was impermissibly vouching for the credibility of the child victim. Thus, this issue was not preserved. See Glendening v. State, 536 So.2d 212, 221 (Fla.1988) (holding, in a trial for sexual battery of a child, that psychologist's improper testimony, vouching for the credibility of the victim's allegation, was not preserved where the objection was based only on relevance), cert. denied, 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989); Assiag v. State, 565 So.2d 387 (Fla. 5th DCA 1990) (finding no fundamental error where two psychologists vouched for the credibility of the sex crime victim).

General acceptance of the validation methodology
Appellant raises the alternative argument that Ms. Carroll's testimony was inadmissible because there was no showing that the methodology she used is generally accepted in the relevant scientific community. This challenge was also not made below, but the argument has support in the recent case of Hadden v. State, 690 So.2d 573 (Fla.1997). In Hadden, the court held that a psychologist's testimony that a child exhibits symptoms consistent with those of a sexually abused child must satisfy the Frye test. Id. at 574-75; see Frye v. United States, 293 F. 1013 (D.C.Cir.1923) (holding that the scientific basis for an expert opinion must, as a prerequisite to admissibility, be shown to be generally *464 accepted in the relevant scientific community). Hadden specifically addressed expert testimony on "child sexual abuse accommodation syndrome" (CSAAS).[1] The court concluded that such testimony is inadmissible as it has not yet been generally accepted in the scientific community. Hadden, 690 So.2d at 575.
In this case, Ms. Carroll's testimony was not primarily a comparison of D.C.'s "symptoms" to those of a typical child abuse victim. Rather, Ms. Carroll applied Dr. Sgroi's conceptual framework to D.C.'s statement itself, essentially comparing D.C.'s statement to those of confirmed victims to identify patterns of consistency. This is a different scientific principle than the one addressed in Hadden.[2] Nevertheless, the holding in Hadden suggests that the scientific principle of validating an accusation of child sexual abuse by application of Dr. Sgroi's methodology would have to pass the Frye test before it could be admitted. See also Page v. Zordan ex rel. Zordan, 564 So.2d 500 (Fla. 2d DCA 1990) (holding that a clinical psychologist's testimony, applying a "sexual abuse legitimacy scale" to evaluate the credibility of the report of abuse, was erroneously admitted where the test was not shown to be generally accepted). Because appellant never objected to Ms. Carroll's testimony on the ground that the scientific principle she applied to validate D.C.'s accusations was not generally accepted in the relevant scientific community, we may not consider this point as a basis for reversal. The supreme court in Hadden noted that the defendant in that case objected and "sufficiently brought the question to the trial court's attention and preserved the issue for appellate review." 690 So.2d at 580 (emphasis added).
We have reviewed the other points raised on appeal and find no error. Accordingly, the judgment and sentence are AFFIRMED.
GLICKSTEIN and KLEIN, JJ., concur.
NOTES
[1] The expert in such cases testifies that the child exhibits certain symptoms commonly found in abused children such as:

sexual behavior (suggestions of sexual activities, e.g., sexual play with toys); behavioral reactions (extreme passiveness or aggressiveness, changes in eating, underachievement); and emotional reactions (sleep disturbances, physical and depressive reactions).
Hadden, 690 So.2d at 575.
[2] We note that Ms. Carroll also testified at various times that D.C.'s symptoms were consistent with those of an abused child. Without objection, Ms. Carroll stated that it was not uncommon for an abused child to seek attention from the abuser, as D.C. did; that it is not unusual that an abused child will be scared to reveal the incidents; and that the child will often feel responsible.