888 So.2d 655 (2004)
STATE of Florida, Petitioner,
v.
Leslie DEMENIUK, a/k/a Leslie Ewing, Respondent.
No. 5D04-756.
District Court of Appeal of Florida, Fifth District.
August 27, 2004.
*656 John Tanner, State Attorney, Daytona Beach, and Norma Kay Wendt and Maureen S. Christine, Assistant State Attorneys, St. Augustine, for Petitioner.
Wm. J. Sheppard and D. Gray Thomas of Sheppard, White and Thomas, P.A., Jacksonville, for Respondent.
MONACO, J.
The State of Florida petitions for a writ of certiorari to quash the order of the circuit court denying the motion of the State for a Frye[1] hearing, and granting the motion of the Respondent, Leslie Demeniuk, a/k/a Leslie Ewing, to vacate an earlier order requiring a Frye hearing. The purpose of the requested Frye hearing was to consider the admissibility of certain expert testimony proposed to be offered by Ms. Demeniuk at her trial for murder. Because the trial court's rulings in this regard departed from the essential requirements of law, which might result in irreparable harm, we grant the petition.
Ms. Demeniuk is charged with the first-degree murder of her 4-year old twin boys. The State is seeking the death penalty. Ms. Demeniuk has given notice that she intends to rely on the defense of insanity. It is the nature of the asserted insanity that gives rise to the present dispute.
*657 Ms. Demeniuk indicated to the trial court that her insanity was substance induced, which she asserts led to involuntary intoxication, and the eventual deaths of her children. In support of her position she retained two doctors, David Menkes and Ernest Miller, who provided reports supporting her claim of insanity. These doctors attributed Ms. Demeniuk's insanity to the prescribed use of modern anti-depressants known as selective serotonin reuptake inhibitors (SSRIs). Among the SSRIs marketed commonly are Zoloft and Paxil. According to her experts, her use of SSRIs caused "akathisia,"[2] which in turn caused Ms. Demeniuk to "self-medicate" with alcohol to an involuntary 0.27 blood-alcohol level, and resulted in her killing her children.
In response, the State also hired two experts, Dr. Alan Waldman and Dr. Douglas Jacobs. These doctors deny the existence of SSRI-induced akathisia with resulting homicidal actions, and both assert that the scientific principles upon which the defense relies are not generally accepted in the scientific community. The trial court, however, declined to consider their testimony.
The State then filed two motions in limine regarding the assertion of SSRI-induced homicidal behavior, contending that the matters proposed to be testified to by the defense experts were subject to analysis under Frye. Initially, the trial court by letter to counsel denied the motion for a Frye hearing, noting that pure opinion testimony of an expert is not subject to Frye. The State, however, persisted in its quest for Frye consideration of the theory espoused by Ms. Demeniuk's expert witnesses. Specifically, the State objected to the testimony of the defense experts concerning an alleged causal connection between suicide and SSRIs, and concerning the proposed testimony that taking SSRIs cause involuntary alcohol consumption. The State contended that the defense testimony on neither subject was pure opinion, that the conclusions were new and novel, and that a Frye analysis was, therefore, appropriate. The trial court eventually agreed to consider the issues raised, and set a hearing in February of 2004.
At the hearing Dr. Menkes, the only witness called, testified for about five hours. When the State cross-examined Dr. Menkes concerning studies he relied on in reaching his opinion regarding the effects of SSRIs, the witness related that he based his opinion on two studies regarding premenstrual syndrome that were undertaken in 1992 and 1993, and on a third unpublished Scottish study regarding depression suffered by some women during premenstrual time periods. He agreed that he had not personally been engaged in research trials of the drugs, but said that he used the results of that research in his clinical practice. Finally, he stated that he also relied on a healthy volunteer study conducted by Dr. Healy. The hearing was continued at the conclusion of Dr. Menkes' testimony.
When the hearing reconvened a month later, the trial judge simply announced at the outset that he had decided to deny the State's motion to exclude the testimony of Dr. Menkes and "whoever else is going to testify as to SSRI's." He then went on to say,

*658 If this was a products liability case, I would not allow the testimony in. I think that the connection is too tenuous, but it's not a products liability case, it's a first-degree murder case, the State seeking the death penalty, and I will allow the jury to decide whether or not the testimony requires any credence.
...
Well, basically I'm finding that there's a sufficient expert opinion, which obviates the need for a Frye hearing. The science that Dr. Menke bases his opinion on, in my opinion, is insufficient for purposes of any case other than a first-degree murder case. However, his opinion is pure opinion and I will allow it.
The trial judge later reduced his order to writing, again saying that the testimony was pure opinion, even though he still agreed that in any case other than first-degree murder, "the Court would have to find the science was so tenuous that the evidence would not be admitted." He concluded that "capital cases are different; the defendant is entitled to present all reasonable defenses." From these rulings, the State seeks certiorari relief.

I. The Applicability of Frye.

It goes without saying that the admissibility in Florida of testimony and other evidence based on new and novel scientific evidence is governed by Frye. See Spann v. State, 857 So.2d 845 (Fla.2003); Hadden v. State, 690 So.2d 573, (Fla.1997). Our review of the Frye issue presented to us by the present case is de novo, and we consider the ruling of the trial court as a matter of law. See Hadden; Poulin v. Fleming, 782 So.2d 452, 455 (Fla. 5th DCA), review denied, 796 So.2d 537 (Fla.2001).
Frye requires that the judge perform the function of gatekeeper. In general terms, the gate of admissibility is not opened unless the proponent of new scientific evidence can demonstrate by the greater weight of the evidence that the scientific principle upon which the evidence is based, and the testing procedures used to apply the principle to the facts of the case, have gained general acceptance for reliability among impartial and disinterested experts within the particular scientific community to which the principle belongs. See Sybers v. State, 841 So.2d 532, 542 (Fla. 1st DCA), review dismissed, 847 So.2d 979 (Fla.2003). The gate does not swing open unless the proponent can demonstrate that the scientific evidence is reliable.
More specifically, Frye requires the trial judge, as gatekeeper, to draw three conclusions before allowing an expert to testify on the applicability of a new scientific principle. The judge must:
1. Determine whether the proposed expert will assist the jury in understanding the evidence or in determining a fact in issue;
2. Decide whether the expert's testimony is based on a scientific principle or discovery that has gained general acceptance in the particular field in which it belongs; and
3. Determine whether a particular witness is qualified as an expert to present opinion testimony on the subject in issue.
See Ramirez v. State, 651 So.2d 1164, 1166 (Fla.1995). Once these determinations are made in the affirmative, the judge may permit the expert to give an opinion on the subject in question. The jury is then tasked with determining the credibility of the opinion. Id. If, however, the opinion is based solely on the knowledge and experience of the expert, it is deemed to be "pure opinion," and is admissible without being subjected to Frye scrutiny. See Sybers, 841 So.2d at 542.
*659 In the present case the trial judge was ambiguous in his conclusions about the admissibility of the scientific evidence proposed by Dr. Menkes. On the one hand, both orally and in writing, he found that the testimony was "too tenuous," and noted that he would not allow it into evidence if the case presented had been one involving products liability.[3] Since the case involved the possible application of the death penalty, however, he ruled that he would allow it to be presented to the jury. On the other hand, both orally and in writing, the court concluded that the testimony of Dr. Menkes was pure opinion, and was, therefore, admissible without being subject to a Frye analysis.
The trial court's ruling thus raises two questions for our determination:
1. Is the proposed testimony of Dr. Menkes pure opinion?
2. If it is not, is there a Frye exception for cases in which the death penalty is a possible outcome?

II. The Nature of "Pure Opinion."

In Hadden, the Florida Supreme Court indirectly defined pure opinion testimony as the testimony of an expert "based solely on the expert's training and experience," and as "testimony personally developed through clinical experience." See Hadden, 690 So.2d at 579-80. The court differentiated "pure opinion testimony based on clinical experience from profile and syndrome evidence," because the latter is "based upon studies and tests." Id. Perhaps more importantly for purposes of the present case, profile and syndrome evidence was found not to be rendered admissible simply by combining it with pure opinion testimony, because the combination cannot by definition be pure opinion. Id., see also Rickgauer v. Sarkar, 804 So.2d 502, 504 (Fla. 5th DCA 2001). The Fourth District Court of Appeal in Holy Cross Hosp., Inc. v. Marrone explained further:
"Pure opinion" refers to expert opinion developed from inductive reasoning based on the experts' own experience, observation, or research, whereas the Frye test applies when an expert witness reaches a conclusion by deduction, from applying new and novel scientific principle, formula, or procedure developed by others.
816 So.2d 1113, 1117 (Fla. 4th DCA 2001), review dismissed, 832 So.2d 104 (Fla.2002).
In the present case it is clear that the testimony offered by Dr. Menkes is not pure opinion. Ultimately, Dr. Menkes testified that his conclusions concerning the effects of SSRI's on Ms. Demeniuk were based on scientific studies and research conducted by three scientists, Dr. Healy, Dr. Teicher, and Dr. Jick. He admitted that he had not personally conducted independent research concerning whether SSRIs are linked to suicide, or violent and aggressive behavior, or into whether SSRIs caused an involuntary craving for alcohol. Dr. Menkes may indeed hold certain pure opinions that are admissible without Frye consideration. The opinions he discussed at the aborted Frye hearing, however, do not fall into that category.
Since the opinions of Dr. Menkes were not based solely on his own personal experience, observations and research, and since his opinions were based on a novel scientific theory, the trial court should have required Frye testing of the theory. Frye testing means implicitly that both sides of the issue should have an opportunity to present evidence regarding whether the theory has gained general acceptance within the relevant scientific community, and whether the expert is qualified to opine on this subject. As neither *660 inquiry was permitted by the trial judge, we conclude that if Frye applies to capital cases, the court erred.

III. Applicability of Frye to Capital Cases.

The trial court apparently felt that because the case against Ms. Demeniuk has capital implications, the defendant should be permitted to introduce virtually any scientific evidence, no matter how novel, without Frye screening. We reject this conclusion, even though we understand and fully appreciate the difficult and sensitive position of a trial court in dealing with issues of what evidence a defendant might be permitted to introduce in death penalty cases.
We do so because we are unable to find any rule of law that excludes any particular variety of case, including capital cases, from the rigors of Frye testing proposed novel scientific evidence. The United States Supreme Court has pointed out in a somewhat different context:
Few rights are more fundamental than that of an accused to present witnesses in his own defense. [Citations omitted]. In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.
Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The defendant's right to call witnesses in a criminal trial, however, is not absolute. See United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); Roussell v. Jeane, 842 F.2d 1512, 1516 (5th Cir.1988). The right, for example, is most obviously limited to presenting witnesses who are able to give relevant and material testimony. See Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); United States v. Duggan, 743 F.2d 59 (2d Cir.1984). We conclude that the presentation of opinion testimony based on new or novel scientific principles is also within the limitations justifiably placed on the right to call witnesses when those principles fail Frye analysis.
There are, in fact, a number of capital cases found in our jurisprudence in which the State's novel scientific evidence has been required to be subjected to Frye testing. See, e.g., Armstrong v. State, 862 So.2d 705 (Fla.2003); Butler v. State, 842 So.2d 817 (Fla.2003); cf., Hudson v. State, 820 So.2d 1070 (Fla. 5th DCA 2002). We can discern no logical reason why the same regimen should not be required of the defense.[4] The rules of evidence apply to all parties in a court of law.

IV. Conclusion.

We conclude that the trial court erred in making a determination that the testimony proposed by Ms. Demeniuk is exempt from Frye testing as pure opinion. Accordingly, we grant the petition, with instructions to conduct a full Frye hearing, at which both the defendant and the State are permitted to present evidence and to cross-examine on all issues associated with the introduction of new and novel scientific evidence.
PETITION FOR WRIT GRANTED.
SAWAYA, C.J., and SHARP, W., J., concur.
NOTES
[1] Frye v. United States, 293 F. 1013 (D.C.Cir.1923).
[2] According to the Diagnostic and Statistical Screening Manual of Mental Disorders, 4th Ed., akathisia consists of "subjective complaints of restlessness accompanied by observed movements (e.g. fidgety movement of the legs, rocking from foot to foot, pacing, an inability to sit still or stand still) developing within a few weeks of starting or raising the dose of the neurolleptic medication."
[3] Miller v. Pfizer, Inc., 356 F.3d 1326 (10th Cir.2004), is instructive in this regard.
[4] Our ruling concerning the requirement for Frye testing new and novel scientific evidence in capital cases is limited to the guilt phase of the trial. The issue of the admissibility of such evidence without Frye testing in the penalty phase is not raised by the case before us, and we therefore offer no opinion on the matter.