NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | | |
|---|---|---|
| BRANDEN CASS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 2D13-4739 |
| | ) | |
| STATE OF FLORIDA, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Opinion filed March 11, 2016.

Appeal from the Circuit Court for Pasco
County; Mary M. Handsel and
Shawn Crane, Judges.

Howard L. Dimmig, II, Public Defender,
and J. L. Perez, Special Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Johnny T. Salgado,
Assistant Attorney General, Tampa,
for Appellee.


NORTHCUTT, Judge.

Branden Cass was convicted of lewd and lascivious battery and lewd and

lascivious molestation. But his trial was tainted when the court allowed the jury to hear

that Cass himself previously had been abused as well as a police detective's opinion

that this made Cass more likely to commit such crimes.  Accordingly, we reverse and remand for a new trial.

Cass, then twenty years old, was arrested based on accusations that he sexually abused a twelve-year-old girl when he was dating the girl's older sister and living with their family.  After being informed of his Miranda[1] rights, in a recorded interview he spoke to a detective about how much he partied, explaining that he did so because of stress.  He said that while he lived with the family, he was made responsible for paying most of the bills, including food, medical expenses, and school supplies.

Cass also said that he partied so much because of things that had happened to him in the past.  He told the detective that he had been molested by babysitters and had been raped when he was young.  The detective responded that such abuse had a serious effect, especially if the victim did not receive counseling. When Cass apparently indicated that he did not get counseling, the detective told him "that actually explains a lot . . . people who . . . who have been exposed to something when they were younger have a more likely chance of doing something similar down the road because of the fact you were a victim at one time. . . .  It makes you more . . . more susceptible."

Cass filed a motion in limine to exclude the detective's statement that Cass was more likely to commit the charged offenses because he had been sexually abused as a child and had not received counseling.  Cass sought to redact the recording of the interview to omit the discussion of his prior sexual abuse and the detective's opinion about its effect.  The trial court denied the motion.  We conclude that

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

the detective was not qualified to offer this opinion and that it was inadmissible in any event.

An expert may offer an opinion when qualified "by knowledge, skill, experience, training, or education." § 90.702, Fla. Stat. (2012). But the State presented no evidence to qualify the detective as an expert who could opine on the likelihood that previously abused individuals would in turn commit abuse. Cf. Hadden v. State, 690 So. 2d 573 (Fla. 1997) (requiring scientific basis before allowing expert testimony about symptoms typically associated with sexually abused children).

Moreover, the only purpose of this evidence was to show that Cass had a propensity to engage in the alleged behaviors that gave rise to the charges against him. This was wholly improper. See § 90.404(2)(a) (excluding evidence of other acts when offered solely to prove bad character or propensity). Improper propensity evidence is presumptively harmful. Abbott v. State, 622 So. 2d 601, 602 (Fla. 2d DCA 1993) (reversing based on improper propensity evidence despite trial court's curative instruction); see also Foreman v. State, 965 So. 2d 1171, 1175-76 (Fla. 2d DCA 2007) (stating that inherent prejudice comes from the risk that the jury will convict based on the evidence of a defendant's propensity rather than relying on proof of the crime charged).

The State correctly has not argued that this error was harmless. Although Cass made incriminating admissions when the officers interviewed him, he recanted his statements at trial, attributing them to his physical and mental fatigue and to his feeling that the interviewers were pressuring him to tell them what they wanted to hear. There was no physical evidence to support the allegations; semen and DNA were found on the

mattress, but Cass was excluded as the donor.  The alleged victim positively identified Cass as the perpetrator, but she said that she never actually saw him or heard him because she never opened her eyes during five encounters, and he never said anything.  She testified that the five incidents occurred at night in her bed, which she shared with her younger sister.  The victim testified that her sister was present for four of the five incidents, yet it was agreed that the sister never saw anything happen.  Other males—the boyfriend of the victim's mother and his two teenaged sons—were in and out of the house during the pertinent time period.

An error is harmless only if "there is no reasonable possibility that the error contributed to the conviction."  State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986); see also Castro v. State, 547 So. 2d 111, 115 (Fla. 1989) ("[I]t is not enough to show that the evidence against a defendant was overwhelming.  Error is harmless only if it can be said beyond a reasonable doubt that the verdict could not have been affected by the error."  (internal quotation marks omitted)).  We cannot say that the verdict in this case was not affected by the erroneous admission of the improper propensity evidence.

Reversed and remanded for a new trial.


CRENSHAW, J., Concurs.
ALTENBERND, J., Dissents with opinion.

ALTENBERND, Judge, Dissenting.

I cannot hold that the trial court abused its discretion in deciding not to excise this small portion of Mr. Cass's recorded statement. It is important to understand that the detective was not testifying under oath to the jury. He was questioning a suspect using minimizing techniques to encourage the suspect to talk. Defense counsel thoroughly cross-examined the detective bringing out that the detective had training in interrogation, that he sometimes tricked and deceived people during interrogation, and that he used minimizing techniques during this interview to overcome the suspect's reluctance to admit criminal behavior.

As is often the case, this interview began with Mr. Cass denying that he did anything wrong. The detective slowly peeled the onion, and Mr. Cass finally made multiple incriminating statements about sexual conduct with the young victim. The interview continued after Mr. Cass was formally arrested and had received his <u>Miranda</u> warnings. During the continuation of the interview, the detective asked him if he had had "other problems" because of his excessive partying. In the transcript in the record, the answer is "inaudible."[2] Thereafter, the transcript reflected the following:

> [DETECTIVE]: Because I know that—I know that when
> you're molested, that it—a lot of times it—it affects a lot of
> stuff in your life and makes things, especially if you never
> dealt with it, you never went to counseling or anything for it?
>
> CASS: (Inaudible.)
>
> [DETECTIVE]: Well, that—that actually explains a lot,
> believe it or not. I can understand. This is the thing. It's—
> I'm sure you saw the infomercials and stuff, people who—
> who have been exposed to something when they're younger

---

[2]The jury listened to the recording of the interview, which is not in our record.

have a more likely chance of doing something similar down the road, because, in fact, you were a victim at one time. You know what I'm saying? It makes you more—more susceptible. And then the drinking and the alcohol, the drinking and the drugs, they just knock down the common sense factor or the—the self-control factor that would normally keep you from something like this. You know what I mean? Like you, you normally, stone sober, would you have ever done this?

CASS: No.

[DETECTIVE]: But when you're drunk and messed up and you're not, you know, you're not a hundred percent in your right mind, I mean. I can—here's the thing. I can—that is a—that's a reason that this happened, but it's—you understand that it's not an excuse to do it. It's not—

CASS: (Inaudible.)

[DETECTIVE]: (Inaudible) but that actually makes sense. You know what I mean? I can understand being a victim of something and making a mistake yourself. So all BS aside, no. I mean, it's—it's not going to make anything worse on you or anything will make anything better and if she tells me that this happened five times, is that right, about?

CASS: The sex? I just remember the once.

[DETECTIVE]: No, not the—not the sex. She never said the sex happened five times, but that the—but the progressive thing that she described, like what I told you, the—at first it was just touching, that stuff –

CASS: (Inaudible.)

[DETECTIVE]: Is that accurate?

CASS: Pretty much.

[DETECTIVE]: Yeah.

CASS: (Inaudible) all blurry (inaudible).

[DETECTIVE]: All right. But you do remember on other occasions going in and touching her?

CASS: Yeah. A couple times.

[DETECTIVE]: And then just the sex was because you got carried away?

CASS: Yes. I remember one point kind of blacking out.

Given that the detective's psychological opinions were clearly designed to bring out this confession, it would be difficult to edit the transcript of the questioning that prompted the answer. Perhaps the trial court could have given stronger instructions that the detective's statements and questions during the interview were not the evidentiary portion of the interview, but I cannot say that no reasonable judge would have allowed this problem to be handled by cross-examination, which is exactly what occurred in this case.