ALTENBERND, Judge.
The State appeals an order granting Ronald Eugene Richardson’s motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. The order set aside Mr. Richardson’s judgment and sentence for unlawful sexual activity with a minor and required a new trial based upon Mr. Richardson’s allegation that his trial counsel was ineffective for failing to request a Frye[1] hearing to challenge the admissibility of certain statistical DNA evidence.[2] Because there was unrebutted evidence establishing that counsel’s decision to permit the admissibility of the evidence was a strategic one, and because we conclude that counsel’s strategy was clearly reasonable under the circumstances, we reverse.
In 2001, Mr. Richardson was charged with unlawful sexual activity with a minor pursuant to section 794.05(1), Florida Statutes (2000), and contributing to the delinquency or dependency of a child pursuant to section 827.04(l)(a), Florida Statutes (2000), for events occurring in April 2000. The State’s evidence supporting the charges included DNA samples obtained from semen found on vaginal swabs from the victim. At Mr. Richardson’s trial, the State presented the testimony of a biostat- *269 istician from the Florida Department of Law Enforcement (FDLE). The biostatis-tician testified that in April 2001, she used an FDLE database to perform a statistical analysis of the DNA sample recovered from the victim and a DNA sample obtained from Mr. Richardson. Based upon that analysis she opined that only 1 in 2.56 quintillion[3] humans of Caucasian descent, randomly selected, would be predicted to have DNA that matched the sample taken from the victim at all thirteen of the locations analyzed. Mr. Richardson’s sample matched at all 13 locations.
Prior to trial, Mr. Richardson’s counsel was informed of the substance of the bio-statistician’s testimony. As a result, trial counsel contacted an expert in molecular genetics to review the FDLE records to assist in determining an appropriate defense to this evidence. At some point in this process, counsel was informed that the database used by the FDLE had structural flaws that called into question the statistics derived from the use of that particular database. Indeed, the FDLE discontinued use of this database shortly after the statistical analysis was performed in Mr. Richardson’s case. See, e.g., Bevil v. State, 875 So.2d 1265 (Fla. 1st DCA 2004) (reversing a conviction based upon the use of the same database for the statistical analysis of DNA evidence when the State’s witness admitted that errors in the database had caused the FDLE to terminate use of the database and the State presented no evidence to otherwise support the validity of the analysis performed).
At the evidentiary hearing on Mr. Richardson’s motion for postconviction relief, the molecular geneticist and trial counsel testified that they had conferred with one another concerning the DNA evidence and the State’s statistical analysis prior to trial in an effort to develop a defense to the evidence. According to trial counsel, he specifically asked the expert whether there would be a material change in the statistical evidence if the DNA evidence was analyzed with an appropriate and available database. The geneticist, although not an expert in statistical analysis, offered his opinion that any change in the statistical evidence would not materially alter the “astronomical” statistical probability that the DNA evidence taken from the victim matched Mr. Richardson’s DNA. Notably, Mr. Richardson offered no evidence at the postconviction hearing to dispute the conclusion of the geneticist or trial counsel in this regard.
Because the FDLE could easily perform an appropriate analysis with the current and unflawed databases available prior to Mr. Richardson’s trial, and because that analysis would not yield a significantly different probability, counsel reasoned that any attempt to challenge the statistical evidence prior to trial might only result in the State obtaining an appropriate analysis and thus strengthening its case against Mr. Richardson. As a result, counsel decided not to challenge the admissibility of the statistical evidence by objecting to the use of the flawed database. Instead, counsel performed a cross-examination of the State’s expert at trial that revealed to the jury the use of the flawed database despite the availability of other appropriate databases. He then argued in closing argument that the State’s use of a flawed database, among other things, provided a reasonable doubt as to Mr. Richardson’s guilt.
*270 Counsel was not entirely unsuccessful in his defense of Mr. Richardson. The jury convicted Mr. Richardson of unlawful sexual activity with a minor but acquitted him of contributing to the delinquency or dependency of a minor. The trial court adjudicated Mr. Richardson guilty of unlawful sexual activity with a minor and sentenced him to ten years in prison.
In his motion for postconviction relief and at the evidentiary hearing on that motion, Mr. Richardson argued that counsel’s performance was deficient because counsel failed to request a Frye hearing regarding the statistical evidence and the use of the flawed database. Mr. Richardson posited that such a hearing would have resulted in the exclusion of any statistical analysis and his probable acquittal on the charge of unlawful sexual activity with a minor. We disagree.
A party seeking postconviction relief based on ineffective assistance of counsel must show (1) counsel’s specific acts or omissions were “so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment” and (2) prejudice by “show[ing] that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Armstrong v. State, 862 So.2d 705, 711 (Fla.2003). “The benchmark for judging any claim of ineffectiveness must be whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Rutherford v. State, 727 So.2d 216, 219 (Fla.1998) (quoting Strickland, 466 U.S. at 686, 104 S.Ct. 2052). Both performance and prejudice present mixed questions of law and fact. Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). Thus, the proper standard of review of an ineffective assistance of counsel claim “is two-pronged: (1) appellate courts must defer to trial courts’ findings on factual issues but (2) must review de novo ultimate conclusions on the performance and prejudice prongs.” Armstrong, 862 So.2d at 711.
We conclude that Mr. Richardson has failed to meet both prongs of Strickland. With respect to trial counsel’s performance, there is a strong presumption that trial counsel’s conduct “falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). An attorney is thus not ineffective for strategic decisions that, in hindsight, did not work to the defendant’s advantage. Mansfield v. State, 911 So.2d 1160, 1174 (Fla.2005). Rather, an unsuccessful strategic decision is not ineffective assistance of counsel if trial counsel considered and rejected alternative courses and that decision was reasonable under prevailing professional standards. Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000). “[E]vi-dence that counsel’s conduct was part of a deliberate, tactical strategy that the defendant understood and approved almost always precludes the establishment of this prong.” Henry v. State, 948 So.2d 609, 617 (Fla.2006). Indeed, the Florida Supreme Court has declared that counsel’s strategic choices made after a thorough investigation of the law and facts are “virtually unchallengeable” in a motion for postconviction relief. See Downs v. State, 453 So.2d 1102, 1108 (Fla.1984).
Here, the unrebutted testimony at the postconviction hearing established that *271 counsel had thoroughly investigated the DNA and statistical evidence the State intended to present at trial. Counsel consulted with an expert regarding the issues now raised by Mr. Richardson in his motion for postconviction relief. In light of the expert’s opinion that a proper statistical analysis would not materially differ from the flawed one the State intended to use, counsel chose to pursue a trial strategy of attacking the flawed analysis before the jury, rather than raising a pretrial challenge to the evidence that might have resulted in the State obtaining a better analysis. This strategy was reasonable under the circumstances.
Moreover, in order to establish prejudice to support his request for post-conviction relief, Mr. Richardson had to show that if counsel had taken the proposed action there is a reasonable probability that the outcome of the trial would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Given the testimony that appropriate databases were available to the State prior to trial that could have easily produced similar statistical evidence as that used to convict Mr. Richardson, Mr. Richardson has been unable to establish that a decision by counsel to seek to exclude the flawed evidence would have probably resulted in an acquittal or a conviction for a lesser crime, rather than the result anticipated by trial counsel — the strengthening of the evidence against Mr. Richardson. We therefore reverse the order granting Mr. Richardson’s motion for postconviction relief.
Reversed.
NORTHCUTT, C.J., and LaROSE, J., Concur.

. Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923) (requiring new or novel scientific principle is admissible only if it has “gained general acceptance in the particular field in which it belongs”).

. Mr. Richardson’s motion for postconviction relief raised four grounds, each related in some manner to the DNA evidence offered at trial. The postconviction court granted relief based only on the argument regarding the use of a flawed database to perform a statistical analysis. Neither party has presented argument in this appeal regarding the other grounds raised, and we therefore do not address them.

. "To comprehend the meaning of these figures, it is necessary to observe that a quintillion is to a billion as a billion is to unity; in other words, there are as many billions in a quintillion as there are units in a billion.” Jules Verne, 20,000 Leagues Under the Sea 154 (Plain Label Books 2007) (1870).