PADOVANO, J.
 

 The defendant appeals his convictions for attempted robbery and aggravated assault with a firearm. He contends that the trial court erred by failing to hold a hearing on a discovery violation by the state. We agree. A potential witness had given prosecutors a tape recorded statement in which she stated that the defendant had confessed the crimes to her, but the statement was not disclosed to the defense. Because a timely disclosure of the statement might have changed the defense trial strategy, the failure to hold a hearing on the discovery violation cannot be regarded as harmless error. Accordingly, we reverse for a new trial.
 

 
 *396
 
 The events leading to the charges against the defendant took place in the course of an unsuccessful drug deal. Wesley Anderson, the victim of the offenses, went to the Palm Court apartment complex in Springfield, Florida, on October 8, 2006, to purchase marijuana. He could not locate his regular supplier so he approached a young black male at the complex and asked whether he could purchase thirty dollars’ worth of marijuana. The man went upstairs for a few minutes and then came back with an assault rifle. He held the rifle to Anderson’s face and said, “Give it up.” Anderson grabbed the barrel of the rifle, and as the two men struggled, the rifle discharged. Anderson sustained a bullet wound to the leg and he was taken to the Bay Medical Center.
 

 A witness at the scene of the crimes informed police officers that the man with the rifle was the defendant, Dennis Curry. Subsequently, the victim identified the defendant from a photo lineup. Based on this evidence, the state filed formal charges against the defendant. He entered a plea of not guilty and the case was tried before a jury.
 

 The issue that is the subject of this appeal surfaced during the state’s opening statement. Counsel for the state told the jurors that a young woman named Sarah Engelby would testify that the defendant had confessed to her that he was the man with the rifle. Although the state had listed Ms. Engelby as a witness in an amended discovery response, there was no indication in the response that the defendant had made a statement to her. Defense counsel had attempted to take Ms. Engelby’s deposition to find out what she might know about the case, but he was not able to obtain service of process at the address provided by the state.
 

 When the prosecutor told the jury of his intention to call Ms. Engelby as a witness, defense counsel objected and requested a sidebar conference. Defense counsel represented to the court that the prosecutor had previously informed him that Ms. En-gelby could not be located and that she would not be available as a witness. The prosecutor acknowledged that defense counsel was not able to serve Ms. Engelby for deposition at the address provided, but said that he later confirmed her address and spoke "with her on the telephone. Defense counsel then asked the State, “Didn’t you tell me after I tried to serve her at the address you couldn’t find her also, sir?” to which the State responded, “No, I honestly do not recall that.” The court then told the attorneys to “go on.”
 

 After the victim and several other witnesses had testified, the prosecutor called Sarah Engelby to the witness stand. When he began to question her about the defendant’s alleged incriminating statement, defense counsel again objected on the ground that her testimony was a surprise. He pointed out that there was no reference to Ms. Engelby in any of the police reports and no indication in any of the other discovery materials that she had made a statement to police officers. The objection was overruled.
 

 Ms. Engelby then told the jury that approximately four or five months before the trial she had attended a party where she met Mr. Curry, who informed her that he had been the shooter at the incident at the Palm Court Apartments. On cross-examination she said that she had previously given a tape recorded statement to a police officer about her alleged conversation with Mr. Curry. This came as a surprise to the lawyers on both sides. Defense counsel requested a hearing on the state’s failure to disclose the tape recording and moved to strike all of Ms. Engel-by’s testimony. The trial court declined to
 
 *397
 
 hold a hearing and denied the motion to strike.
 

 Defense counsel called as a witness the lead investigator in the case, Sergeant Barry Roberts of the Springfield Police Department. Sergeant Roberts had testified earlier for the state but he had not been asked about Sarah Engelby’s tape recorded statement and made no mention of it on his own. In response to questions by defense counsel, Sergeant Roberts confirmed that he had taken a tape recorded statement from Ms. Engelby. He said that an assistant state attorney by the name of Joe Grammer had sat in while Ms. Engelby’s statement was recorded. Sergeant Roberts then explained that he had taken the tape recording back to his office to have it transcribed. He admitted that keeping the State Attorney’s office informed is his responsibility but testified that he could not be sure if a copy of the statement transcript was ever sent to the State Attorney’s office, because transcripts are sent out through the police records division.
 

 With this verification that Ms. Engelby had, in fact, given a tape recorded statement, defense counsel renewed his objection and request for a hearing on the discovery violation. He argued that Sergeant Roberts had violated the discovery rules by failing to disclose the statement. The trial judge denied the request, noting that the officer may not have been at fault. The judge reasoned that the error may have been caused by Joe Grammer, the assistant state attorney handling that part of the case.
 

 The jury found the defendant guilty of attempted robbery and aggravated assault with a firearm, and the trial judge sentenced him to twenty-five years for each offense, to run concurrently. He now appeals to this court contending that the trial court erred in denying his request for a hearing on the alleged discovery violation by the state.
 

 A defendant’s right to a hearing on a possible discovery violation was first recognized in
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971), and the procedure is now so familiar that it is referred to simply as a
 
 Richardson
 
 hearing. The procedure is executed in two steps. The trial judge must first determine whether the state violated the discovery rules.
 
 See Sinclair v. State,
 
 657 So.2d 1138, 1140 (Fla.1995). If a violation occurred, the judge must then assess “whether the state’s violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial.”
 
 Richardson
 
 246 So.2d at 775 (quoting
 
 Ramirez v. State,
 
 241 So.2d 744, 747 (Fla. 4th DCA 1970)).
 

 The parties do not agree on the applicable standard of review. Counsel for the defendant argues that we are entitled to review the trial court’s decision de novo. This argument is supported by passages in the
 
 Richardson
 
 opinion. In contrast, counsel for the state maintains that the decision to grant or deny a
 
 Richardson
 
 hearing, like other decisions pertaining to discovery, is subject to review by the abuse of discretion standard.
 

 The state’s position appears to be supported by general statements drawn from the case law but it does not hold up in the context of the particular decision we must review here. One such general statement can be found in
 
 Pender v. State,
 
 700 So.2d 664 (Fla.1997). In part of the opinion the court observed that if the trial court determines that no discovery violation occurred, the reviewing court must first determine whether the trial court abused its discretion. However, the holding in
 
 Pender
 
 was that a
 
 Richardson
 
 hearing was required as a matter of law because there had been a
 
 *398
 
 discovery violation. Another such general statement appears in
 
 Evans v. State,
 
 995 So.2d 933 (Fla.2008). In one line of the opinion the court stated that the abuse of discretion standard applies to the denial of a request for a
 
 Richardson
 
 hearing. But the court held that since the evidence at issue was not subject to discovery, there was no discovery violation.
 

 We do not read these opinions to suggest that a trial judge has discretion to deny a request for a
 
 Richardson
 
 hearing. The very point of the procedure is to require the hearing. That much is clear from the text of the
 
 Richardson
 
 opinion itself. Quoting
 
 Ramirez,
 
 241 So.2d at 747, the court in
 
 Richardson
 
 stated that when a discovery violation is brought to the trial judge’s attention, the trial court’s discretion can be properly exercised
 
 “only after the court has made an adequate inquiry into all of the surrounding circumstances.Richardson,
 
 246 So.2d at 775 (emphasis in original). The hearing itself is not discretionary.
 

 Part of the confusion might be attributable to the fact that there are many decisions that are made in the context of a
 
 Richardson
 
 hearing that are, in fact, discretionary decisions. For example, many of the issues presented by the second part of the test are likely to be discretionary. Whether the discovery violation was trivial or substantial is an issue that calls for the exercise of judgment on the part of the trial judge. Likewise, the task of deciding whether the violation had a prejudicial effect on the defendant’s ability to prepare for trial is an issue that necessarily requires the exercise of judgment.
 

 But these kinds of adjudications are not the same as the initial decision to grant or deny a
 
 Richardson
 
 hearing. That is not a judgment call. A party who has established the existence of a discovery violation is entitled to a hearing as a matter of law. This principle is illustrated not only in the text of the
 
 Richardson
 
 decision, as we have explained, but also in many other appellate court decisions. As the supreme court later observed in
 
 Snelgrove v. State,
 
 921 So.2d 560, 567 (Fla. 2005),
 
 “Richardson
 
 mandates that once a discovery violation is revealed, the trial court must conduct an inquiry to determine the sanctions that should be imposed on the violating party.” This court has also held that a
 
 Richardson
 
 hearing is required when it has been shown that a discovery violation has occurred.
 
 See Sears v. State,
 
 656 So.2d 595, 596 (Fla. 1st DCA 1995);
 
 C.D.B v. State,
 
 662 So.2d 738, 741 (Fla. 1st DCA 1995).
 

 The threshold question in all of these cases is whether there was a discovery violation. This might be a factual issue, for example if the dispute is whether the evidence was or was not disclosed. In that event, a hearing would be needed to resolve the dispute. It is possible that the issue might present only a question of law, for example, if the alleged violation turns on the interpretation of a rule. In that case, the need for a hearing would depend on the resolution of the issue. If the court correctly determined that there was no violation, there would be no need for a hearing. But if a discovery violation has occurred, the trial court is required by law to grant a
 
 Richardson
 
 hearing. The court cannot simply exercise its discretion to deny a hearing.
 

 In the present case, there was no factual dispute regarding the existence of the discovery violation. Nor was the issue a matter of discretion. The trial court evidently concluded that a violation by one assistant state attorney cannot be charged to
 
 another.
 
 Whether that conclusion is correct is a matter of law. Hence, we review the decision de novo.
 

 
 *399
 
 By this standard, we conclude that the state violated the discovery rules. Rule 8.220(b)(1)(B) of the Florida Rules of Criminal Procedure requires the prosecution to disclose the substance of any “statement of any person” who is listed as a potential witness. The term “statement” is defined in the rule as “a written statement made by the person and signed or otherwise adopted or approved by the person and also includes any statement of any kind or manner made by the person and written or recorded or summarized in any writing or recording.” Here, the witness gave a tape recorded statement to a police officer in the presence of an assistant state attorney. The state’s failure to disclose the existence of this statement was a clear violation of rule 3.220(b)(1)(B).
 

 The failure to disclose the statement also violated rule 3.220(b)(1)(C). This rule provides that the state shall disclose “any written or recorded statements and the substance of any oral statements made by the defendant, including a copy of any statements contained in police reports or report summaries, together with the name and address of each witness to the statements.” In the present case, the state disclosed the name and address of the witness but did not disclose the substance of the oral statement the defendant allegedly made to the witness.
 

 The fact that the assistant state attorney who tried the case was unaware of the violation is not a defense. The state is charged with constructive knowledge of information in the hands of law enforcement officers.
 
 See Tarrant v. State,
 
 668 So.2d 223, 225 (Fla. 4th DCA 1996). Likewise, an assistant state attorney is charged with knowledge of information held by other lawyers and agents working in the state attorney’s office. The legal obligations imposed by the discovery rules are not merely the personal obligations of a particular lawyer; they apply more broadly to the parties.
 

 We come now to the final task of deciding whether the error in failing to hold a
 
 Richardson
 
 hearing was harmless error. The test for applying the harmless error rule in this context is whether the denial of the hearing resulted in procedural prejudice. As the court explained in
 
 Scipio v. State,
 
 928 So.2d 1138, 1147 (Fla. 2006), the inquiry is whether the discovery violation materially hindered the defendant’s trial preparation or strategy. A conviction may be affirmed despite an error in denying a
 
 Richardson
 
 hearing only if the reviewing court concludes beyond a reasonable doubt that the error did not result in procedural prejudice.
 

 It would be difficult to justify an affir-mance based on the harmless error rule in the circumstances presented here. The state’s case was based primarily on the identifications by the victim and a witness at the scene. Counsel for the defense vigorously challenged these identifications and argued reasonable doubt based on the lack of any other significant evidence. We cannot say that the defense lawyer would have taken the same approach had he known before trial that the state would introduce evidence of the defendant’s confession to the crime. Hence, we cannot say that there was no procedural prejudice.
 

 For these reasons, we conclude that the trial judge erred in failing to hold a
 
 Richardson
 
 hearing on the discovery violations and that the error was prejudicial. The defendant is entitled to a new trial.
 

 Reversed.
 

 KAHN and VAN NORTWICK, JJ., concur.