BENTON, J.
On direct appeal from convictions for lewd and lascivious molestation of a victim less than twelve years of age, Tommy Jack Harrison argues that the trial court erred in excluding a defense expert and the opinion testimony he would have given. We reverse and remand for a new trial.
We will not disturb a trial court’s decision on the admissibility of expert testimony absent an abuse of discretion. See Doctors Co. v. State, Dep’t of Ins., 940 So.2d 466, 469 (Fla. 1st DCA 2006) (“In our consideration of the trial court’s ruling excluding the testimony of Appellant’s expert witness, we apply the well established standard of review that ‘acceptance or rejection of expert testimony is a matter within the sound discretion of the lower tribunal, and such decision will not be overturned on appeal absent a showing of abuse of discretion.’” (quoting Gray v. Russell Corp., 681 So.2d 310, 316 (Fla. 1st DCA 1996))). But we find an abuse of discretion here.
Our supreme court has explained that “in cases such as this, ‘some expert testimony may be helpful,”’ Tingle v. State, 536 So.2d 202, 205 (Fla.1988) (quoting United States v. Azure, 801 F.2d 336, 340 (8th Cir.1986)), and has made clear that “an expert may properly aid a jury in assessing the veracity of a victim of child sexual abuse ‘without usurping their exclusive function by generally testifying about a child’s ability to separate truth from fantasy.’ ” Id. (quoting Azure, 801 F.2d at 340). See Quintero v. State, 889 So.2d 1013, 1014 (Fla. 1st DCA 2004).
At trial, the alleged victim, then eleven years of age, testified that the appellant twice “rubbed” her “private” seven or *729 eight years earlier, when she was three or four years old. She testified she did not remember whether he touched her outside or underneath her clothing. The prosecution’s case rested entirely on these accusations, accusations which the alleged victim had made less than a year before trial (although her mother and a social worker, echoing the same belated accusations, also recounted them for the jury).
Appellant’s trial counsel defended by questioning the reliability of an eleven-year old child’s memory of events that occurred when the child was three or four years old. The trial court excluded the defense’s only expert, however, disallowing his testimony on grounds that (1) the expert’s name was disclosed late and (2) “the Court does not find that this proffered specialized knowledge by Dr. Larson is something that is necessary for the trier of fact to understand in interpreting the evidence or determining a fact in issue.”
The trial court’s decision not to permit the expert to testify because of defense counsel’s failure to list him as a witness until 13 days prior to trial was a clear abuse of discretion: The State made no objection on this basis, and the trial court failed to conduct a hearing of the kind required by Richardson v. State, 246 So.2d 771 (Fla.1971). See Curry v. State, 1 So.3d 394, 398 (Fla. 1st DCA 2009) (“Richardson mandates that once a discovery violation is revealed, the trial court must conduct an inquiry to determine the sanctions that should be imposed on the violating party.” (quoting Snelgrove v. State, 921 So.2d 560, 567 (Fla.2005))); Grace v. State, 832 So.2d 224, 226-27 (Fla. 2d DCA 2002) (“A trial court’s ruling excluding evidence as a discovery sanction is subject to an abuse of discretion standard of review. While Florida Rule of Criminal Procedure 3.220(n)(l) authorizes a court to exclude evidence as a sanction for a violation of the discovery rules, this sanction should only be imposed when there is no other adequate remedy.” (internal citations omitted)). In the absence of a •Richardson hearing, the trial court was in no position to make — and did not make — a determination that there was no other adequate remedy for the discovery violation the trial court spontaneously ruled had taken place.
On the second ground, even though it denied defense counsel’s request to allow Dr. Larson to testify on proffer, see Fehringer v. State, 976 So.2d 1218, 1220 (Fla. 4th DCA 2008) (“A trial court commits error if it denies a request to proffer testimony which is reasonably related to the issues at trial.” (citing Wood v. State, 654 So.2d 218, 220 (Fla. 1st DCA 1995))); Ro-zier v. State, 636 So.2d 1386, 1387-88 (Fla. 4th DCA 1994), the trial court ruled that Dr. Larson’s testimony would not assist the jury in understanding the evidence or determining a fact in issue. See § 90.702, Fla. Stat. (2007) (“If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.”). The prosecution did not question Dr. Larson’s psychological expertise or object on grounds other than relevance. See generally Ramirez v. State, 651 So.2d 1164 (Fla.1995); Daniels v. State, 4 So.3d 745, 748-49 (Fla. 2d DCA 2009).
Trial counsel defended not on the theory that the child was lying — defense counsel told the jury she believed the child thought she was telling the truth — but by suggesting that memories from early childhood are unreliable and susceptible to distortion by external factors. One such external influence, the defense contended, could *730 have been a “Law and Order” television program that portrayed a boy assaulting his sister sexually, a program the child testified that she watched the night before she made the molestation allegations to her mother. In closing argument, defense counsel argued that “personal experience ... [a]ffects a person’s memory, and certainly a child’s memory.” Defense counsel emphasized the “suggestibility” or suggestiveness of “things outside the child, like the movie she saw, like the sexually charged atmosphere in our society, like the great emphasis that our society is now putting on this whole field of child sexual abuse.”
It was in an effort to establish this defense that Mr. Harrison’s trial counsel sought to call Dr. Larson as an expert witness. The trial court reasoned that the expert testimony would not assist the jury because jurors already “understand[ ] the basic premise that children are children, that sometimes they will create things that are fantasies that may or may not be true.... ” (What the trial court meant by “fantasies that may or may not be true” is unclear.) The trial court seemed not to acknowledge that the defense sought to raise a reasonable doubt by proving that a truthful child might mis-remember seven- or eight-year old events, and that the defense had the right to try to do so.
At issue here is testimony significantly different from an “expert’s general testimony as to eyewitness fallibility.” Rodriguez v. State, 413 So.2d 1303, 1305 (Fla. 3d DCA 1982). See McMullen v. State, 714 So.2d 368, 372 (Fla.1998) (holding “the admissibility of expert testimony regarding the reliability of eyewitness testimony is left to the sound discretion of the trial judge”). Nor would Dr. Larson’s testimony have been “a conclusion on an ultimate issue of fact based solely on [the defendant’s] self-serving statements.” Mitchell v. State, 965 So.2d 246, 251 (Fla. 4th DCA 2007). An unusually lengthy interval separated the child’s allegations from the alleged acts.
The defense sought to debunk common misconceptions regarding the formation and accuracy of children’s memories. Only if the reliability of accusations leveled by an eleven-year-old child — of sexual misconduct occurring seven or eight years earlier, accusations made in the same conversation in which she reports seeing, the night before, a television program about child sexual activity — can be said to be within the ordinary understanding of jurors, could it be argued that Dr. Larson’s testimony could have served no purpose. Compare Jordan v. State, 694 So.2d 708, 717 (Fla.1997) (trial court erred by allowing a clinical gerontologist’s expert testimony regarding the fear felt by an elderly female victim in a confrontation with an armed defendant because “common experiences dictate that an elderly woman approached in public by a man with a gun will be terrified”); Lewis v. State, 572 So.2d 908, 911 (Fla.1990); Johnson v. State, 393 So.2d 1069, 1072 (Fla.1980) (“We believe it is within the common knowledge of the jury that a person being attacked and beaten undergoes stress that might cloud a subsequent identification of the assailant by the victim.” (quoting Nelson v. State, 362 So.2d 1017, 1021 (Fla. 3d DCA 1978))). But see Boyer v. State, 825 So.2d 418, 419 (Fla. 1st DCA 2002) (“However, the trial court is not compelled to exclude the expert just because the testimony may cover matters within the average juror’s comprehension. See United States v. Hall, 93 F.3d 1337, 1342 (7th Cir.1996).”).
The present case involves a child’s allegations of sexual abuse in the distant past. We also ruled that excluding expert testimony was an abuse of discretion in Boyer, where we said: “Had [the expert’s] testi *731 mony been admitted, it ‘would have let the jury know that a phenomenon known as false confessions exists, how to recognize it, and how to decide whether it fit the facts of the case being tried.’ It is for the jury to determine the weight to give to [the expert’s] testimony, and to decide whether they believed his theory or ‘the more commonplace explanation that the confession was true.’ ” 825 So.2d at 420 (citations omitted).
Our holding in Boyer is apposite here, inasmuch as “[i]t is well settled that, in child sexual abuse cases, ‘an expert may properly aid a jury in assessing the veracity of a victim of child abuse ... by discussing various patterns of consistency in the stories of child sexual abuse victims and comparing those patterns in [the victim’s] story.’ ” Quintero, 889 So.2d at 1014 (quoting Tingle, 536 So.2d at 205) (trial court did not err by allowing expert to testify that child victims do not initially fully disclose abuse in 67 percent to 70 percent of child sexual abuse cases). Although, as our supreme court has explained, in child sexual abuse cases, too, “expert testimony may not be offered to directly vouch for the credibility of a witness,” Tingle, 536 So.2d at 205, expert testimony has repeatedly been deemed admissible in child sexual abuse cases as an aid to assessing the reliability of the child victim’s account. See Toro v. State, 642 So.2d 78 (Fla. 5th DCA 1994) (collecting cases).
To make a decision regarding general acceptance of expert testimony under Frye v. United States, 293 F. 1013 (D.C.Cir.1923), we “may examine expert testimony, scientific and legal writings, and judicial opinions.” Hadden v. State, 690 So.2d 573, 579 (Fla.1997) (citing Flanagan v. State, 625 So.2d 827, 828 (Fla.1993)). In one such writing, Professor Weaver and colleagues have reported what they characterize as a common misconception that a child’s memory of events is usually as reliable as an adult’s recollection, whereas in fact children “are more susceptible to suggestion, fantasy, perceived demand characteristics, and source confusion.” Charles A. Weaver, III, Trent Terrell & Amanda Holmes, Evaluating the Reliability of Eyewitness Memory in Product Identification Cases, SM038 ALI-ABA 709 (Nov. 30-Dec. 1, 2006). Furthermore, “[r]esearch demonstrates that the accuracy of children’s memories declines more quickly over time than that of adults.” Lucy S. McGough, Good Enough for Government Work: The Constitutional Duty to Preserve Forensic Interviews of Child Victims, 65 Law & Contemp. Probs. 179, 182 (Winter 2002). According to defense counsel, Dr. Larson was prepared to testify that experts in the field have determined that thirty percent of the time reports of child sexual abuse are false. We have allowed analogous testimony in child sexual abuse cases not unlike the present case. Quintero, 889 So.2d at 1013 (upholding conviction where an expert witness testified “that child victims do not initially disclose in 67% to 70% of child sexual abuse cases”).
Although the trial judge did not have the benefit of law review articles counsel did not cite below, we note the accepted “premise that the trial court’s ruling on a Frye issue is subject to de novo review on appeal. See Brim v. State, 695 So.2d 268, 274 (Fla.1997).” Murray v. State, 838 So.2d 1073, 1077-78 (Fla.2002). Where the issue is properly preserved, “we must address the matter of general acceptance as of the time of appeal, rather than the time of trial.” Bevil v. State, 875 So.2d 1265, 1268 (Fla. 1st DCA 2004) (citing Ramirez v. State, 810 So.2d 836, 844-45 (Fla.2001)). The expert testimony counsel described below in her spoken proffer would have been highly relevant.
*732 “Any doubt as to admissibility under Frye should be resolved in a manner that minimizes the chance of a wrongful conviction.” Ramirez v. State, 810 So.2d 836, 853 (Fla.2001). Where so many years elapse between an alleged touching and allegations that the touching occurred, there is clearly an “unusual circumstance[ ]” within the meaning of cases like Florida Power Corp. v. Barron, 481 So.2d 1309, 1310 (Fla. 2d DCA 1986). The trial court abused its discretion when it precluded Dr. Larson’s testimony about the formation of children’s memories.
Excluding Dr. Larson left Mr. Harrison’s lawyer with no witness to present the theory that external factors accounted for the child’s report of events alleged to have occurred seven or eight years earlier when she was three or four years old. The defense did not, indeed, call any witnesses. In the present case, and despite the lack of testimony on proffer, it is apparent that Dr. Larson’s “testimony ‘went to the heart’ of Appellant’s defense, [and that] its exclusion cannot be considered harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).” Boyer, 825 So.2d at 420.
Reversed and remanded.
KAHN, J., concurs; CLARK, J., dissents with opinion.