DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CARLOS MACIAS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-1360

[December 19, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Michael J. Linn, Judge; L.T. Case No. 562022CF002040.

Daniel Eisinger, Public Defender, and Devin Johnson, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Heidi L. Bettendorf, Senior Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals from his conviction and sentence for one count of lewd or lascivious molestation on a person between twelve and sixteen years old. The defendant primarily argues the circuit court erred in finding the state did not commit a discovery violation regarding DNA evidence, leading the circuit court to not conduct a required *Richardson* hearing.

We agree the circuit court erred in not finding a discovery violation and not conducting a required *Richardson* hearing. These errors were not harmless. Thus, we reverse and remand for a new trial.

We present this opinion in five sections:
1. The state's pre-trial discovery disclosure;
2. The discovery violation allegation and the circuit court's ruling;
3. The trial witnesses, closing arguments, and new trial motion;
4. The parties' arguments on appeal; and
5. Our review.

## 1. *The State's Pre-Trial Discovery Disclosure*

The state's pre-trial discovery disclosure included, among other things: (a) the probable cause affidavit supporting the defendant's arrest; and (b) a DNA report. The probable cause affidavit alleged:

> The victim, a 13-year-old girl … , told me she was in the vehicle, back driver's side passenger seat, with her [grandmother], [who had driven] to the suspect's hotel to help him with his cell phone. The grandmother met the suspect, in the parking lot, where she obtained the suspect's cell phone and called customer service to assist with the issue of his phone. The victim stated she was sitting in the back seat, directly behind [the grandmother]. While the grandmother was working on the phone, the suspect asked the victim for [five] dollars in change, in exchange for a [five-]dollar bill. The victim normally carries quarters in her wallet and did give the suspect the change in exchange for the cash.
>
> The victim had Pokémon game cards in the vehicle she was playing with, at which time the suspect asked what the cards were and she told him they were Pokémon cards. She explained to the suspect about the cards and gave him some of them so they could play a game. The victim said the suspect was leaning against the door and talking to her through her window. The victim stated he reached through the car window with his right hand, placed one of the cards on her upper thigh and slid his hand up to her vagina, rubbing her vagina area with two fingers (victim showed pointer and middle finger), outside her pants. The victim said the suspect continued to rub her vagina while she had the card on her thighs, at which time she removed the card and placed it somewhere else in the vehicle. The suspect then grabbed another Pokémon card, put it on her upper thigh again, and continued using his fingers to rub her vagina, making it look as if he was trying to grab the card. The suspect touched her more than 4 times and while doing so, placed his pointing finger over his mouth saying, "shhhhh, don't say anything."
>
> The victim said she was very scared and wanted to roll up the window, but felt bad because he was family and she didn't want to hurt him. The victim stated she waited for her brother to leave the kitchen before she disclosed the incident to her grandmother because she was embarrassed.

Following the defendant's arrest, the victim's shorts were DNA-tested by an Indian River Crime Lab analyst. The analyst found DNA matching the victim and an unknown male. The analyst drafted a report mentioning the victim's DNA but, for whatever reason, did not mention the male DNA.

Three months before trial, the state disclosed to defense counsel the DNA report and identified the DNA analyst as a trial witness. In the three months between that disclosure and the trial, the state served seven more discovery disclosures, none of which amended the DNA report or otherwise mentioned the male DNA finding.

In the week before trial, the state prepped the DNA analyst for trial. The DNA analyst told the state about finding male DNA on the victim's shorts. However, the state did not serve another discovery disclosure or otherwise serve an amended DNA report mentioning the male DNA finding.

## 2. *The Discovery Violation Allegation and the Circuit Court's Ruling*

During opening statements, the state told the jury: "You're going to hear testimony from a DNA analyst. You're going to hear that there was presence of male DNA in the crotch area of [the victim's] shorts. However, you're also going to hear there was not enough of a quantity to quantify if it was [the defendant's] DNA. All [the DNA analyst is] going to be able to testify is that there was the presence of male DNA on [the] crotch area [of the victim's shorts]." (emphasis added).

Defense counsel asked to approach the bench, and the following sidebar discussion ensued between the defense and the state:

> [DEFENSE]: Judge, the [p]rosecutor has made an assertion during his opening statement that is contained nowhere in any of the discovery in this case. While we acknowledge that there was … evidence was collected and forensically examined, I provided the Court with a copy of the forensic DNA report which says nothing … like the [p]rosecutor just asserted in front of this jury. So either it's a discovery violation or its some other violation, because there is no indication in any forensic material that we have been given that they were able to type any kind of genetic material, whether it was male, female, or whether it was even human genetic material that was recovered from the shorts. So I am asking the Court to conduct a *Richardson* hearing, please.

3

[STATE]: Judge, [defense counsel] did not take the deposition of [the DNA analyst]. I spoke to [the DNA analyst] last week and that is what [the DNA analyst] told me. Now, if we read the [DNA] report, [the DNA] was not enough to quality and quantify as a comparison. However, [the DNA analyst] did find that there was presence of a [male] chromosome when doing [the] analysis. Now, if [defense counsel] took the deposition of [the DNA analyst], [defense counsel] would know that, but [defense counsel] didn't. And this is when I spoke to [the DNA analyst] last week to do his pre-trial [preparation].

[DEFENSE]: Judge, I have been handling these kinds of cases for 29 years. Any time they have genetic material that is recovered from a human, and they have the ability to type it, or … narrow the scope of who the possible contributors are, it is included in the report. If that was included in the report, I would have taken the deposition of the DNA analyst. It is notably absent, and for the [p]rosecutor to claim … this is not a big deal, it's [defense counsel's] fault because [defense counsel] didn't take [the DNA analyst's deposition], when there was never any indication [in the DNA report] that anything was found which would have cued my interest in taking this DNA analyst's deposition.

(emphasis added).

The circuit court found the state had not committed a discovery violation:

Well, I mean, I certainly empathize with [defense counsel], and while I haven't been practicing law as long as [defense counsel] has, this is the first I've seen this. But it's been a couple weeks in a row the Indian River Crime Lab has done things that I've never seen or even thought were possible, but I'm not finding that there's a discovery violation. It is going to certainly be a point on cross-examination.

(emphasis added).

The circuit court then offered defense counsel the opportunity to depose the DNA analyst. Defense counsel acquiesced, stating: "I mean, you found that there's not a discovery violation, so that is my remedy at this point."

4

The circuit court, despite having found the state had not committed a discovery violation, nevertheless admonished the state:

> I don't know how you look at that report and not see that this is a flag. I really don't. I really don't. You know, <u>this is not how cases are supposed to go down. This is not how cases are supposed to go down.</u>

(emphasis added).

The circuit court also found defense counsel was not responsible for not having discovered the DNA analyst's undisclosed test results revealing male DNA on the victim's shorts.

> <u>If I were in [defense counsel's] shoes, I would have done the same exact thing. I would have [seen] the [DNA] report, I wouldn't have gone and deposed the [DNA analyst]</u>, because I've never seen this happen before, and you should know that that's an unusual thing to be left out of a report. So I mean, frankly, a critical piece of evidence in the case.

(emphasis added).

However, despite acknowledging the DNA report had failed to mention that male DNA was on the victim's shorts, and despite admonishing the state for not having addressed that omission before trial, the circuit court repeated its finding that the omission was not a discovery violation:

> <u>But I can't say … an omission in a report is a discovery violation.</u> And I guess now [defense counsel] is going to have to start interviewing every Indian River Crime Lab analyst on every one of [defense counsel's] cases because of this, which it's a shame we've gotten to this point[.]

(emphasis added).

### 3. *The Trial Witnesses, Closing Arguments, and New Trial Motion*

The state's trial witnesses included the victim, the victim's grandmother, the victim's mother, the lead detective, and the DNA analyst.

The victim testified consistently with the probable cause affidavit quoted above.

The victim's grandmother testified she was on the phone and preoccupied when the alleged incident occurred. Aside from overhearing the victim ask the defendant if he knew how to play Pokémon, the grandmother did not hear anything concerning. Nor did the grandmother see anything that occurred in the backseat. However, the grandmother noted that, on the way home from the hotel, the victim, who was normally very talkative, was very quiet. Later that night, the victim told the grandmother about what had happened. The grandmother reported the incident to the police the following morning.

The victim's mother testified the victim shared a bathroom with her brother. The victim and the brother kept their dirty laundry in separate piles in the shared bathroom. A few days after reporting the incident, a detective retrieved the victim's shorts from the shared bathroom.

The lead detective testified that, during an interview, the defendant admitted to having reached into the vehicle and touching the victim's leg. The defendant, however, denied having touched the victim's private area.

The day before the DNA analyst testified, defense counsel renewed his argument that the state had committed a discovery violation in failing to disclose that male DNA was on the victim's shorts. Defense counsel cited Florida Rule of Criminal Procedure 3.220(b)(1)(J), which requires the state, upon the defendant's request, "to disclose to the defendant … the following information and material within the state's possession or control: … reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons[.]" Fla. R. Crim. P. 3.220(b)(1)(J). Defense counsel added: "[A]s far as the State's belief that I just need to take [the DNA analyst's] deposition, I think that is contrary to [rule 3.220(b)(1)(J)] as the results of scientific tests are required to be disclosed."

The following discussion then occurred between the circuit court and the state:

> [COURT]: [Y]ou've already gotten my wrath once. … I didn't say this was a … discovery violation, but what is concerning to me is you know [defense counsel] didn't know about [the male DNA finding]. Why are you afraid of that? Why are you afraid of that?
>
> [STATE]: I'm not, Judge.

6

[COURT]: Well, then why didn't you tell [defense counsel about the male DNA finding]? Because otherwise, <u>how is this not an issue that we're not going to be litigating two years down the road if the Defendant is convicted</u>?

[STATE]: <u>I did not believe that this was an issue that I would have to tell him.</u> It's not inconsistent with the report. … [I]t didn't raise the alarm bell, Judge. … [W]hen it happens in the future, I will disclose those types of things. I didn't think I had an obligation to.

[COURT]: <u>I just don't understand why the truth has to hide in the shadows.</u> … I don't understand that. … And … again, at this point in time, I can't find that there's a discovery violation because again, the name of the expert was given, the report was given with a gigantic omission in it. … It's not going to prevent [defense counsel] from cross-examining, especially now that [defense counsel will] be able to depose [the DNA analyst], but <u>I understand why [defense counsel] would rely on [the DNA report] and not do a deposition up until this point.</u> ….

(emphasis added).

The following day, after defense counsel had conducted an impromptu hallway deposition of the DNA analyst, the DNA analyst testified before the jury. The DNA analyst testified he had swabbed the shorts' "outside front legs and crotch area." From that swab, the DNA analyst extracted the victim's DNA and an unknown male's DNA. However, the unknown male's DNA lacked sufficient quantity to compare to a known sample. Thus, the DNA analyst could not testify the male DNA matched the defendant's DNA.

On cross-examination, the DNA analyst conceded that the unknown male's DNA could have transferred to the victim's shorts in various different ways, including "[i]f the garment is worn by a student that goes to a co-ed school" and "[i]f the person who wears this garment has a brother that they share a bathroom with."

The state's closing emphasized that the male DNA on the victim's shorts contributed to proving the defendant had touched the victim's private area:

[Y]ou heard from [the DNA analyst]. You heard that <u>there was male DNA present on her shorts</u>. And I got up in opening. I said, it's going to be there. We're not going to prove whose it

7

was. However, you can use your common sense that is consistent with her being touched by [the defendant].

And look, you could argue it could have been anyone, it could have been someone in gym class, it could have been someone at home, or you combine [the presence of male DNA on the victim's shorts] with her testimony, her testimony today and yesterday, her testimony to her family that night when she disclosed [the defendant's touching] initially. Use your common sense.

(emphasis added).

Defense counsel presented his best argument as to why the jury should not give any weight to the male DNA found on the victim's shorts:

I tell you that DNA means nothing. Zero. … [The state's argument that] … an unquantifiable amount of [male] DNA … [was from the defendant] … is disingenu[ous], it is misleading, and it's something I think is a flag for you, as jurors, to acknowledge that there is no evidence in the case, if that's what [the state is] … trying to hang [its] hat on.

We know she shares a house with three other boys. … Grandfather, brother, and father. We know that [the] brother and [the victim] share the same bathroom. … Well, do we know where that [male DNA] came from? No. … [The DNA analyst] is not pointing the finger at [the defendant].

Defense counsel also argued the victim's allegations were implausible considering the incident had allegedly occurred during daytime, in a public place, while her grandmother had been sitting in the driver's seat. Defense counsel also highlighted the lack of corroborating eyewitnesses.

The jury ultimately found the defendant guilty as charged. Following the verdict, the defendant filed a motion for new trial. The motion argued a new trial was warranted based on the circuit court's errors in not finding a discovery violation and not conducting a required *Richardson* hearing.

After a hearing, the circuit court denied the motion, repeating its finding that the state had not committed a discovery violation: "[A]s far as the DNA omission in the report, I did not find that that was a discovery violation. Therefore, I didn't conduct the *Richardson* inquiry, which [I was] not required to at that point." This appeal followed.

8

## 4. *The Parties' Arguments on Appeal*

The defendant summarizes his argument on appeal as follows:

> The State admitted to withholding evidence that the DNA testing showed the presence of male DNA on the victim's shorts.  The trial court called this evidence "critical," yet refused to hold a *Richardson* hearing.  Instead, without a [*Richardson*] hearing, [the trial court] determined that no discovery violation [had] occurred, rendering the [*Richardson*] hearing unnecessary.  This was an abuse of discretion, requiring reversal for a new trial.
>
> ....
>
> [T]he State cannot meet [the] extraordinarily high burden [of demonstrating harmless error].  Had [defense counsel] known of the DNA evidence[,] there are many things [defense counsel] might have done differently.  In terms of trial preparation, [defense counsel] told the court [he] would have deposed the [DNA] analyst.  Instead, [defense counsel conducted] an impromptu deposition [of the DNA analyst] in the hallway, but that alone does not negate the prejudice.

The state summarizes its response as follows:

> [The defendant] alleges a discovery violation occurred when the DNA [analyst] … determined male DNA was present in the sample, but that he could not identify the source of the DNA.  This was not a material "change" in the [DNA analyst's] testimony because [he] did not identify anyone, including [the defendant], as the source of the male DNA.  While the DNA findings may have been more detailed, [the DNA findings] never inculpated [the defendant].
>
> ....
>
> [T]here was no discovery violation where the State disclosed the DNA report and listed the DNA [analyst] as a witness.  The State's theory all along was that [the defendant] touched the victim between her legs over her shorts.  The evidence would always have shown that the victim shared a bathroom with her brother … and that two other men lived in

9

the house.  Thus, the evidence that the DNA was male would never have inculpated [the defendant].  [Defense counsel's] strategic choice in failing to depose the DNA [analyst] prior to trial cannot be used to facilitate harmful error.

....

To the extent this Court could consider the State's failure to disclose the presence of male DNA [as] a [discovery] violation, any error was harmless.  The trial court gave defense counsel an opportunity to depose the DNA [analyst] prior to the State's presentation of [the DNA analyst's] testimony at trial ... [and] [d]efense counsel was able to effectively cross-examine [the DNA analyst] about the male DNA finding.

### 5. *Our Review*

"Whether a possible discovery violation exists such that a *Richardson* hearing is required is reviewed de novo."  *Robinson v. State*, 198 So. 3d 1088, 1092 (Fla. 4th DCA 2016).[1]

---

[1]  As our sister court has observed, the standard of review of *Richardson*-based issues varies depending upon the context of the particular decision being reviewed.  *Curry v. State*, 1 So. 3d 394, 397-98 (Fla. 1st DCA 2009).  A trial court's decision of whether the state has committed a discovery violation, and thus whether to grant or deny a *Richardson* hearing, is reviewed de novo as a matter of law.  *Id.* at 398.  "This might be a factual issue, for example if the dispute is whether the evidence was or was not disclosed.  In that event, [an evidentiary] hearing would be needed to resolve the dispute."  *Id.*  Upon conducting a *Richardson* hearing, a trial court's decisions on (1) whether the state's violation was inadvertent or willful, (2) whether the violation was trivial or substantial, and (3) what effect the violation may have had upon a defendant's ability to properly prepare for trial, all require the exercise of judgment, and thus are reviewed for an abuse of discretion.  *Id.*; *see also Conde v. State*, 860 So. 2d 930, 958 (Fla. 2003) ("A trial court's decision on a *Richardson* hearing is subject to reversal only upon a showing of abuse of discretion.").  As generally held, if any of the foregoing decisions are based on a trial court's factual findings and credibility determinations, we review whether those decisions are supported by competent substantial evidence.  *See, e.g., Ross v. State*, 45 So. 3d 403, 414 (Fla. 2010) ("We defer to a trial court's findings of fact as long as [such findings] are supported by competent, substantial evidence[.]").

To the extent any of our court's precedent has blended the foregoing standards of review in *Richardson*-based cases, we clarify the correct standards of review here, and expect practitioners to apply the correct standards of review as warranted.

A. <u>The Error in Not Finding a Discovery Violation.</u>

Florida Rule of Criminal Procedure 3.220(b)(1)(J) requires the state, within fifteen days after the defendant's service of a notice of discovery, "to disclose to the defendant … the following information and material within the state's possession or control: … reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons[.]" Fla. R. Crim. P. 3.220(b)(1)(J).

Also, Florida Rule of Criminal Procedure 3.220(j) pertinently provides:

> **Continuing Duty to Disclose.** If, subsequent to compliance with the rules, a party discovers additional witnesses or material that the party would have been under a duty to disclose or produce at the time of the previous compliance, <u>the party must promptly disclose or produce the witnesses or material in the same manner as required under these rules for initial discovery</u>. …

Fla. R. Crim. P. 3.220(j) (emphasis added). *See also Kilpatrick v. State*, 376 So. 2d 386, 388 (Fla. 1979) ("Florida's criminal discovery rules are designed to prevent surprise by either the prosecution or the defense. [The rules'] purpose is to facilitate a truthful fact-finding process.").

Applying these rules here, the state committed two discovery violations. First, the DNA analyst's testing revealed the presence of male DNA on the victim's shorts. However, contrary to rule 3.220(b)(1)(J), the DNA analyst (a state agent) did not include that test result in the DNA report which the state disclosed in discovery. Second, in the week before trial, the DNA analyst informed the state that male DNA was on the victim's shorts. However, contrary to rule 3.220(j), the state did not promptly disclose that test result to the defense. Instead, the state waited until its opening statement to allege that male DNA was on the victim's shorts.

As for why the circuit court may have found no discovery violation had occurred, the circuit court's comments suggest it somehow believed an omission of information cannot constitute a discovery violation, as opposed to an alteration of previously-disclosed information. However, we do not know of any authority holding that an omission of information required to be disclosed under rule 3.220(b) is not a discovery violation. Rather, allowing the state and its agents to omit information required to be disclosed under rule 3.220(b) would essentially negate the rule itself.

11

The circuit court's failure to acknowledge these discovery violations was error. *See Chamberlain v. State*, 254 So. 3d 1027, 1032 (Fla. 4th DCA 2018) ("Generally, where the State does not reveal additional witnesses or evidence until the eve of trial or during trial, a discovery violation occurs.").

Further, contrary to the state's argument, the state's discovery violations were not waived by defense counsel's failure to depose the DNA analyst. *See J.S. v. State*, 277 So. 3d 270, 274 (Fla. 2d DCA 2019) ("[T]he trial court's focus on whether defense counsel had deposed [the witness] was misplaced because the failure of the defense to depose a known witness is insufficient to overcome the state's failure to inform the defense of a statement made by the defendant to which the witness testifies.") (citation and internal quotation marks omitted).

Indeed, here, even the circuit court noted: "If I were in [defense counsel's] shoes, I would have done the same exact thing. I would have s[een] the [DNA] report, I wouldn't have gone and deposed the [DNA analyst]." The circuit court added: "I understand why [defense counsel] would rely on [the DNA report] and not do a deposition up until this point."

## B. The Error in Not Conducting a Required *Richardson* Hearing.

"A *Richardson* hearing is required when there is a *possible* discovery violation in order to flesh out whether there has indeed been a discovery violation." *Guy v. State*, 287 So. 3d 620, 625 (Fla. 4th DCA 2019) (citation omitted). Here, because the circuit court erred in not finding a discovery violation, the circuit court erred in not conducting a required *Richardson* hearing.

Even if the circuit court stood by its errant finding that no discovery violation had occurred, the circuit court still should have conducted a *Richardson* hearing to establish a record of findings for us to review if we were to conclude—as we have done here—that discovery violations had indeed occurred. Further, if the circuit court had conducted a required *Richardson* hearing—by applying this case's facts to the three-pronged *Richardson* inquiry—the circuit court itself may have realized that discovery violations had indeed occurred.

To conduct a *Richardson* hearing, the circuit court "must inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation." *Brown v. State*, 165 So. 3d 726, 728–29 (Fla. 4th DCA 2015) (internal quotation marks omitted). On the third prong, "the [s]tate must

show in the record that the defendant was not prejudiced by the discovery violation." *Id.* at 729 (internal quotation marks omitted).

On the first prong, the record does not indicate whether the DNA analyst's failure to mention finding male DNA on the victim's shorts was willful or inadvertent. However, the record indicates the state, upon learning of this omission while prepping the DNA analyst for trial, willfully failed to disclose that test result as required by rule 3.220(b)(1)(J) and rule 3.220(j). The state's alleged lack of knowledge of those rules' requirements did not make its choice of non-disclosure to be any less willful.

On the second prong, the record indicates the state's discovery violations were substantial. Defense counsel, having reviewed the DNA report which did not mention any finding of male DNA on the victim's shorts, went into trial expecting that the DNA report offered no probative value of the defendant's guilt. However, the finding of male DNA on the victim's shorts—not disclosed until the state's opening statement— permitted the state to emphasize in closing argument that "common sense" indicated the male DNA on the victim's shorts came from the defendant, even if the male DNA could not be matched to the defendant specifically. *See State v. Wood*, 966 N.W.2d 825, 857–58 (Neb. 2021) ("Here, the presence of male DNA on the external vaginal swabs of the victim's external vaginal area made the truth of the victim's allegations more probable, even if the DNA did not identify [the defendant] specifically.").

On the third prong, the record indicates the state's discovery violations had a prejudicial effect on defense counsel's trial preparation. As stated above, defense counsel, having reviewed the DNA report which did not mention any finding of male DNA on the victim's shorts, went into trial expecting that the DNA report offered no probative value of the defendant's guilt. However, the finding of male DNA on the victim's shorts—not disclosed until the state's opening statement—placed defense counsel into a Hobson's choice of conducting an impromptu hallway deposition of the DNA analyst only minutes before the DNA analyst's testimony, or doing nothing. Defense counsel had no opportunity to adequately prepare to cross-examine the DNA analyst about the male DNA finding or hire an expert to counter the DNA analyst's findings. Further, defense counsel was deprived of the ability to adequately confer with the defendant regarding how the male DNA finding affected the decision of whether to proceed with trial, accept a state plea offer, or plead open to the court.

Based on the foregoing findings, if the circuit court, as stated above, had conducted a required *Richardson* hearing—by applying this case's facts to the three-pronged *Richardson* inquiry—the circuit court itself may

have realized that discovery violations had indeed occurred. However, by not conducting a required *Richardson* hearing, the circuit court unquestionably erred.

C. Why the Circuit Court's Errors Were Not Harmless

As we explained in *Moon v. State*, 317 So. 3d 153, 157 (Fla. 4th DCA 2021):

> A trial court's failure to conduct a proper *Richardson* inquiry is not per se reversible error, but is subject to a harmless error analysis. A discovery violation is harmless only if an appellate court can determine, beyond a reasonable doubt, that the defense was not procedurally prejudiced. The defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred.
>
> An analysis of procedural prejudice considers how the defense might have responded had it known about the undisclosed piece of evidence and contemplates the possibility that the defense could have acted to counter the harmful effects of the discovery violation. The required focus is on how the defense might have responded and not on whether the undisclosed evidence affected the verdict.

(internal citations and quotation marks omitted). "[I]t is the State's burden to show that the error was harmless …. The state's burden to show a discovery violation to be harmless is extraordinarily high." *Brown*, 165 So. 3d at 729 (internal citations and quotation marks omitted).

Here, based on our findings above regarding the *Richardson* inquiry's third prong, the state has failed to meet its extraordinarily high burden to show that the circuit court's errors in not finding a discovery violation and not conducting a required *Richardson* hearing were harmless beyond a reasonable doubt.

## ***Conclusion***

The state's DNA analyst, contrary to rule 3.220(b)(1)(J), omitted from the DNA report the substantial finding that male DNA was found on the victim's shorts. The prosecutor, upon being advised of this omission, willfully failed to disclose that test result as required by rule 3.220(b)(1)(J)

14

and rule 3.220(j), and then used that evidence against the defendant at trial. The circuit court, despite its repeated statements that something was amiss, erred in not finding a discovery violation had occurred and not conducting a required *Richardson* hearing. Those errors were not harmless. Based on the foregoing, we are compelled to reverse and remand for a new trial.

*Reversed and remanded for new trial.*

MAY and CONNER, JJ., concur.

\*      \*      \*

**Not final until disposition of timely-filed motion for rehearing.**